# Southern Iron Works v. Central of Georgia Railway Co.

## Statutory Action of Ejectment.

1. *Ejectment; admissibility in evidence of declarations of deceased owner as to boundary.*—Evidence of declarations of deceased officers of a corporation owning real estate as to the location of the boundary lines thereof, not shown to have been made when the declarant was pointing out or marking the boundaries or discharging some duty in reference thereto, is hearsay and inadmissible in behalf of the grantee of said corporation in an action of ejectment brought by a third party, wherein said boundary is involved.

2. *Boundaries; when street used as a boundary.*—Where a street is named in a deed as a boundary of the land conveyed, it will be considered in the absence of evidence to the contrary to mean the street as actually open and in use.

3. *Ejectment; disclaimer; sufficiency of verdict and judgment.* Where in an action of ejectment the defendant files a plea disclaiming title to a specifically described portion of the land sued for, and no issue is raised thereon, a verdict reciting that the jury finds for plaintiff for the lands sued for, which are not included in the plea of disclaimer, is not void for uncertainty; and a judgment rendered upon said verdict in favor of the plaintiff, describing the lands not included in the plea of disclaimer and declaring plaintiff entitled thereto is valid.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. J. C. RICHARDSON.

This was a statutory action of ejectment, brought
by the Central of Georgia Railway Company against
the Southern Iron Works, to recover a tract or parcel
of land, which was described in the complaint as fol-
lows: "Commencing on the east side of McDonough
street one hundred and forty-two (142) feet north of
the intersection of McDonough and Pollard street and
running east parallel with Pollard street three hun-
dred (300) feet to the west side of Hull street, thence
north along the west side of Hull street one hundred
and fifty-eight (158) feet, thence west and parallel
with Pollard street three hundred (300 ) feet to the
eastern edge of McDonough street, and thence south
along the eastern edge of McDonough street one hun-
dred and fifty-eight (158) feet to the point of begin-
ning, just north of and adjoining the property of the
defendant, and of which plaintiff was in possession,
and upon which pending such possession and before
the commencement of this suit the defendant entered
and unlawfully detains," etc.

The defendant filed the following plea: "Comes the
defendant and for answer to the complaint in the
above stated cause says, that it disclaims possession
of or interest in any part of the premises sued for,
lying and being north of a line drawn from McDon-
ough to Hull street parallel with, and, to-wit, 151 feet
6 inches north of Pollard street, and as to the remain-
der of said premises sued for, it pleads not guilty."

The respective claims of the plaintiff and the de-
fendant are sufficiently set forth in the opinion. The
plaintiff introduced in evidence the deed from the
Montgomery & Eufaula Railway Company to Carr, and
the deed from Carr to the Montgomery Iron
Works Company. There was also introduced in evi-
dence the lease which was executed by the Montgomery
& Eufaula Railway Company to the Montgomery Iron
Works, on February 27, 1885.

There was evidence introduced by the defendants
showing that at the time of the Carr purchase there

stood on the land next McDonough street a building which had been there at least since 1870, and that the northern line of this building was 151 feet and 6 inches north of the present line of Pollard street; that the Iron Works Company went into possession of the land from Pollard street up to this 151 feet 6 inch line in 1882 or 1883, and has remained continuously in possession ever since.

During the examination of J. J. Woodward, a witness for the defendant, he testified he had been connected with the Montgomery Iron Works from 1886 to 1895; that in 1888 he became president of said company; that said company claimed to be the owner of all of the land up to the line of said building just above referred to; that during the time witness was an officer in said company, a controversy arose as to what was the dividing line between the lands of said company and the lands of the Montgomery & Eufaula Railway Company; that thereupon he, the witness, conferred with Bradford Dunham, who was at one time superintendent of the Montgomery Iron Works, and also talked with O. O. Nelson and Stephen Scheussler, as to where the line was. Thereupon the defendant asked this witness, by separate questions, to state his conversation with said Stephen Scheussler, O. O. Nelson and Bradford Dunham. To each of these questions the plaintiff objected, because it called for irrelevant, incompetent and hearsay testimony, and was not a declaration which would bind the plaintiff or any of its grantors. The bill of exceptions states that "defendant stated to the court that it intended to prove by the witness that the true line of Pollard street was 12 feet north of and parallel with the present line of Pollard street, as shown by the maps," which were introduced in evidence; "and that there had been an encroachment of 12 feet on to Pollard street; that there was a latent ambiguity in the deed which had been introduced in evidence,   *   *   *   and if the encroachment beginning at the northeast corner of Pollard street and McDonough street and running thence north along McDonough street 142 feet, began at the point

12 feet north of the present line of Pollard street, instead of at the point in Pollard street established by the encroachment of 12 feet therein, that the dividing line between the lands of the Montgomery Iron Works and the lands of the Montgomery & Eufaula Railway Company would then be north of and include," said property sued for. The court sustained the objection to each of the questions, asked the several witnesses, and the defendant separately excepted. The defendant then asked this witness the following questions: "If he did have any conversation with the said Scheussler, Nelson and Dunham in reference to the northern line of Pollard street, and where .it was located?" "Whether or not said Scheussler, Nelson and Dunham made any statement to witness in reference to whether or not there had been any encroachment into Pollard street on the north side thereof?" The plaintiff separately objected to each of said questions as they were asked to the witnesses separately, upon the same grounds as stated above; the court sustained each objection, and the defendant separately excepted. The other facts of the case are sufficiently stated in the opinion.

The court at the request of the plaintiff gave to the jury the following written charge: (1.) "If the jury believe the evidence in this case, they will find a verdict for the plaintiff for the land sued for not included in the plea of disclaimer." The defendant duly excepted to the giving of this charge, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "It is a question for the jury to determine from the evidence in this case what was the dividing line between the lands of the Montgomery Iron Works and the lands of the Montgomery & Eufaula Railway Company on the 27th day of February, 1885." (2.) "It is a question for the jury to determine from all the evidence in the case where the northeastern corner of Pollard and McDonough streets was at the time of the execution and delivery of the conveyances from the railroad company to Carr, and from Carr to the Iron Works."

[Southern Iron Works v. Central of Georgia Railway Co.]

Upon the return of a verdict in favor of the plaintiff, judgment was rendered thereon. The verdict is shown in the judgment entry, and is in words and figures as follows: "Comes the parties by their attorneys and the plaintiff files a plea of disclaimer as to the following described land, to-wit, commencing at a point on the east side of McDonough street 151 feet north of the intersection of McDonough and Pollard streets, running east parallel with Pollard street 300 feet to the eastern edge of McDonough street, thence south along the eastern edge of McDonough street 149 feet to the point of beginning. No issue being taken on said plea of disclaimer by the plaintiff, it is considered, ordered and adjudged by the court that the plaintiff have and recover of the defendant the property hereinabove described. And the defendant interposed the plea of 'not guilty' as to the rest of the land described in the complaint; thereupon came a jury composed of D. H. Lewis and eleven others who, upon their oaths do say: 'We, the jury find for the plaintiff for the lands sued for not included in the plea of disclaimer,' above mentioned. It is therefore considered by the court that the plaintiff have and recover of the defendant the following described lot, tract or parcel of land, to-wit: Commencing at a point on the east side of McDonough street 142 feet north of the intersection of McDonough and Pollard street, thence running east parallel with Pollard street 300 feet to the west side of Hull street, thence north nine feet along the west side of Hull street, thence west 300 feet to the west side of McDonough street, thence south along the east side of McDonough street, nine feet to the point of beginning, together with the costs in this behalf expended, for which let execution issue. Defendant is allowed by the court sixty days from this date to tender and have signed a bill of exceptions."

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved; and also assigned as error the rendering of the judgment for the plaintiff as set forth in said judgment entry.

WATTS, TROY & CAFFEY, for appellant.—Parol evidence is admissible to show the existence of and to explain a latent ambiguity in a deed.—*Guilmartin v. Wood*, 76 Ala. 209; 3 Brick. Dig. 413, §§ 105-6; p. 414, § 110; 2 Ency. Law (2d ed.), 292, note 1; 293, note 1; 295; 4 Ency. Law (2d ed.), 848-50.

When, though no doubt or uncertainty appears on the face of a deed, proof *aliunde* shows that language used in it is alike applicable to two or more persons or things, there is shown to be a latent ambiguity.—*Chambers v. Ringstaff*, 69 Ala. 144.

Hearsay evidence of statements of old inhabitants as to boundary is competent when that is in issue.—*Doe v. Mayer*, 8 Ala. 284; *Shook v. Pate*, 50 Ala. 92; 4 Ency. Law (2d ed.), 850-51. In ejectment, plaintiff must rely for recovery on the strength of his own title.—*Feagin v. Jones*, 94 Ala. 594.

A deed to lands which are at the time held adversely to the grantor is void against the adverse possessor, and will not support ejectment by the grantee against him. *Davis v. Curry*, 85 Ala. 134; *Murray v. Hayes*, 92 Ala. 559; *Pearson v. King*, 99 Ala. 127.

Where a tract of land is sued for and part is disclaimed which is described under a *videlicet,* and the dispute is as to boundary, a judgment which fails definitely to ascertain where the disputed boundary lies is insufficient.—*Alexander v. Wheeler*, 69 Ala. 342; *McQueen v. Lampley,* 74 Ala. 408.

THOS. G. & CHAS. P. JONES, *contra.*

TYSON, J.—Action of ejectment. The matter of controversy is the location of a boundary line between the lots of plaintiff and defendant situated north of Pollard street and between McDonough and Hull streets, in the city of Montgomery. The area of land involved is a strip 9 feet 6 inches wide and three hundred feet long. The Montgomery & Eufaula Railway Company is the source from which both parties derive their respective titles. That company owning the entire tract of land north of Pollard street, between McDonough

and Hull streets, in 1882 made a deed to one Carr to a portion of it as follows: "Beginning at the northeast corner of Pollard and McDonough streets, from thence running north along McDonough street one hundred and forty-two feet, thence east three hundred feet to Hull street, thence south along Hull street one hundred and forty-two feet to north side of Pollard street, thence west along north side of Pollard street three hundred feet to the point of beginning, together with all the improvements and appurtenances thereunto belonging." On the 15th of June, 1883, Carr conveyed this lot, employing the identical description used in the deed to him, to the Montgomery Iron Works Company. On the 27th day of February, 1885, the Montgomery Iron Works executed a lease by which it became the tenant of the Montgomery & Eufaula Railway Company, of to-wit: "All of that part of the enclosed lot now occupied by the said Montgomery Iron Works Company for a foundry and machine shop lying north of the dividing line in said lot between the land of the said Montgomery Iron Works Company and the land of the Montgomery & Eufaula Railway Company."

It is shown by the record that plaintiff succeeded to the title to the lot of the Montgomery & Eufaula Railway Company covered by the lease, and also to its rights under the lease contract. It is also shown that defendant succeeded to the title of the Montgomery Iron Works Company of its lot and assumed the obligations of that company to pay the rent under the lease of the other lot, which it did until 1897. It will certainly not be disputed that if the strip of land in controversy lies north of the dividing line between the two lots, that the defendant was the tenant of the plaintiff and cannot be heard to deny the latter's title to it without first surrendering the possession of it. Counsel for defendant, appellant here, have discussed at some length the doctrine of adverse possession, and have attempted to show that defendant has acquired title in that way. We may as well eliminate that question at once. It is not in the case, and, indeed, under the undisputed facts cannot be. For if the strip of land in controversy is con-

veyed by the Carr deed, then plaintiff had no title and it was not embraced in the lease. On the other hand, if it was not conveyed by the Carr deed, it is undoubtedly embraced in the lease and the plaintiff is entitled to recover it.

As the line between the two lots is not definitely fixed by the description in the lease, reference must be had to the description of the lot in the Carr deed. It is only by making the length of the line along McDonough street 151 feet and 6 inches instead of 142 feet as fixed in the Carr deed that this strip is excluded from the operation of the lease contract. In other words, if the defendant had been allowed to show in the manner attempted that the north line of Pollard street is in fact some twelve feet north of the line of that street as actually opened up and in use at the time of the execution of the Carr deed and the lease, this would have embraced the strip of land in controversy in this deed and excluded it from the lease. Whether the defendant could be permitted to do this, in any event, we do not decide. He certainly was not entitled to introduce the statements of Schuesler and Nelson for that purpose.

In *Hunnicutt v. Peyton,* 102 U. S. 364, the court, speaking to this question, said : "It is true that in several States of the Union decisions have been made recognizing the admissibility of declarations of deceased persons, even though they were statements of particular facts and in regard to mere private boundaries; but many of them, perhaps most of them, were admissible on other grounds, either as parts of the *res gestae* or declarations of parties in possession. We think such is not the preponderant weight of decision. In Massachusetts, where the subject has been much discussed, it is held that, to be admissible, such declarations must have been made by persons in possession of land and in the act of pointing out their boundaries. * * * We will not undertake to review the vast number of decisions of State courts upon this subject. It would greatly protract this opinion. Some things may be deduced from them, which, though not universally recognized, are the conclusions to which, we think, a great majority

of them lead. In questions of private boundary, decla-rations of particular facts, as distinguished from repu-tation, made by deceased persons, are not admissible unless they are made by persons who, it is shown, had knowledge of that whereof they spoke, and who were on the land, or in possession of it when the declarations were made. To be evidence, they must have been made when the declarant was pointing out or marking the boundaries or discharging some duties relating thereto. A declaration which is a mere recital of something past is not an exception to the rule that excludes hearsay evidence." The assignment which the court sustained and for which it reversed the cause was based upon an exception to the admission in evidence of a statement of the location of the lines of the land in dispute, by a deceased surveyor who had located them, but was not at the time he made the statement pointing them out or marking them upon the ground or discharging other duties relating to them.—*Barrett v. Kelly, ante.* p. 378.

The court having properly refused to admit the state-ments of Schuessler and Nelson, the evidence establishes, without dispute the boundaries of the lot owned by de-fendant to be as contended for by plaintiff, which lo-cates the dividing line between the two lots so as to embrace the strip in dispute in the lease contract.

In the absence of evidence to the contrary, where a street is named as a boundary in a deed, it must be taken that the parties intended the boundary to be the street as actually opened up and in use.—4 Am. & Eng. Encyc. Law (2d ed.), 815.

The remaining point requiring our consideration re-lates to the validity of the verdict of the jury, upon which the judgment is founded. It is insisted that the. verdict is void for uncertainty and, therefore, the judg-ment is invalid. This point was not called to the atten-tion of the trial court by motion or otherwise as was done in *Alexander v. Wheeler,* 69 Ala. 342. Whatever may be the practice in this respect, it is clear to us, that the verdict and judgment thereon are not open to the attack made upon them when construed in connection

with the disclaimer set forth and shown by the recitals of the judgment entry.

Affirmed.