# Smith v. Bachus, et al.

### Ejectment.

(Decided November 11, 1915.   70 South. 261.)

1. **Ejectment; Description; Verdict.**—Where the land described in ejectment was a certain quarter-section of a government subdivision, and defendant pleaded not guilty as to the land lying west of a line claimed by him to be the true line, and the verdict found for plaintiff for "all of the land sued for to-wit, southwest quarter of southwest quarter," and further found that the C. and C. survey was the true line, a judgment that plaintiff recover the southwest quarter of the southwest quarter was not erroneous, notwithstanding that part of the judgment declaring the C. and C. line to be the true line, was indefinite and afforded no sufficient guide for the sheriff in the premises, and notwithstanding that a verdict in an ejectment suit involving a disputed boundary line which designates the true boundary line by the name of the surveyor does not respond to the issue.

2. **Same; Suggesting Boundary Line; Sufficiency.**—Under § 3843, Code 1907, a suggestion that the suit involves a boundary line dispute should point out the true line, though the statute does not so provide.

3. **Action; Joinder; Ejectment.**—The fact that several tracts of land were claimed in several counts of the complaint, did not constitute a misjoinder where the several tracts sued for might have been embraced in one count.

4. **Trial; Reception of Evidence; Objection.**—Under rule 33, Circuit Court Practice, where a specific objection is made to evidence, all other objections are waived.

5. **Deeds; Estates Created; Construction.**—The estate created by a deed is to be determined, not alone by the words used, but by the situation and circumstances of the parties, the context of the instrument, and the fact as to whether the instrument was written by a person acquainted with the use of technical legal terms.

[Smith v. Bachus, et al.]

6. **Same.**—Where a deed conveyed land to a daughter of the grantor during her natural life for her sole and separate use, to have and to hold unto her during her life, and after her death to go by way of remainder to her heirs, the daughter being then unmarried, apparently being drawn by one who understood the proper use of the terms employed, it was intended to create a life estate in the daughter, with the remainder to her heirs at law at the date of her death.

7. **Same; Construction; Rule in Shelley's Case.**—The rule in Shelley's case was abolished by the provisions of § 3403, Code 1907, and its predecessors in former Codes, and now the persons who on the termination of the life estate are the heirs, issue, or heirs of the body of the life tenant, are entitled to take as purchasers by virtue of the remainder so limited to them.

8. **Same; Estates Created.**—The deed to a woman during her natural life for her sole and separate use to hold and to have unto her during her natural life, and after her death to go by way of remainder to her heirs, is within the express terms of § 3403, Code 1907.

9. **Same; Remainder; Persons Entitled.**—Where land was conveyed to a woman for life, and after her death to go by way of remainder to her heirs, her husband was not an heir, and her children were the remaindermen.

10. **Curtesy; Title of Wife; Life Estate.**—Where land was conveyed to a woman for life, with remainder over to her heirs, her husband was not entitled to a life estate therein by curtesy.

11. **Ejectment; Issues.**—To maintain ejectment after the death of the life tenant the remaindermen must show title by introducing the deeds creating the remainder.

12. **Same.**—When suing in ejectment after the death of the life tenant, to establish their prima facie right to recover, the remaindermen must show the death of the life tenant, that they were the remaindermen created by the deed, and that the grantor was in possession of the land when the deed was executed, or show a regular chain of title to them from a grantor in possession, or from the government.

13. **Same; Evidence; Declarations and Acts of Former Owner.**—Where the action was ejectment by persons claiming under a deed from H. involving a boundary dispute, evidence that H. claimed the land in question to a "stob," that he was present when the "stob" was driven, and that he took his grantee and pointed out the line and located the corner, and put them in possession to the lines claimed by plaintiff, was properly admitted, since H. was dead at the time of the trial and it was competent to show his claim of ownership in connection with the survey, that he placed the "stob" as a monument of his boundary line, and was completing his grant by pointing out the lines to the grantees.

14. **Boundaries; Questions of Fact.**—In an action in ejectment involving a disputed boundary line, all bounds and starting points were questions of fact to be determined from the testimony.

15. **Same; Evidence; Experts.**—Where the action involved a dispute as to the location of a line between two government sections, a surveyor who had testified as to the facts of a survey made by him and another surveyor, may; as an expert, express an opinion as to whether the line run by them, made a true line between the sections.

16. **Same; Facts or Conclusions.**—Where the action involved a dispute as to a boundary line, the question to a witness as to whether he knew where a

[Smith v. Bachus, et al.]

survey made by certain surveyors ran with reference to the lands, and his answer that it ran right along with the original survey, the old section line, and that he could tell it by the old marked trees on the north end of the line; was properly admitted, since it was a statement of fact of a definite line of survey, and the question did not call for an opinion.

17. Same.—Where plaintiffs claimed under H., evidence as to the possession of H. at the time he delivered the land to his grantee, and pointed out the line thereof, was properly admitted.

18. Same.—Where a defendant pleaded not guilty as to land west of the boundary line claimed by him to be the true line, evidence as to whether defendant had asserted any claim to the land east of the line as claimed by plaintiff before moving the corner, was properly admitted.

19. Witnesses; Examination; Leading Questions.—The question to a surveyor as to whether in running a survey he ran it from a certain corner was leading, as the witness should have related the facts of his survey.

20. Same.—Under Circuit Court Rule 18, the court may confine the examination of witnesses to one counsel on each side.

21. Same; Impeachment; Predicate.—Where a surveyor had testified to the making of a survey and to its correctness, and had stated that his chain was a quarter of an inch over length, and that allowance was made for the over length, and no proper predicate was laid for his impeachment as to the over length, questions asked defendant as to whether the surveyor told him that the chain was over length and that it had been shortened, were properly excluded.

22. Ejectment; Evidence; Acts and Declarations of Former Owners.— Where the possession of the land began years ago, and the earlier owners had better opportunities of recognizing the monuments adopted by government engineers, consisting of markings on trees, and of established corners indicated by the government field notes as of certain distances and angles from certain points, and there were several surveys locating different lines as the government survey, it was error to exclude evidence as to whether the predecessors of the parties recognized a fence or hedge row as marking the government survey, and it is immaterial whether such reliance is one made by agreement or acquiescence of the parties, or by a private or government survey.

23. Same; Pleading; Issue.—In ejectment a plea of not guilty as to lands lying west of a certain line raised every issue, except that of since the last continuance.

24. Same; Evidence; Acts and Declarations of Former Owners.—Where the action involved a disputed boundary line, and plaintiffs claimed that a line made by certain surveyors was the true line, evidence that defendant moved his fence along the south line of such section to the line fixed by such surveyor, thereby adopting such survey where it was to his interest to do so, was admissible.

25. Adverse Possession; Disputed Boundaries.—Where adjoining land owners claimed to a hedge row, believing it to be the true line, and not intending to claim any further than the true line, and it developed that such hedge row was not the true line the holding of one of such owners was not adverse to the other.

26. Same.—If adjoining land owners hold possession to a hedge row as the true line, the possession of each to the hedge row was adverse to the other.

[Smith v. Bachus, et al.]

APPEAL·from Clay Circuit Court.

Heard before Hon. HUGH D..MERRILL.

Ejectment by H. T. Bachus and others, pro᾽ ami, against Javan J. Smith. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

LACKEY & ROWLAND, and O. B. CORNELIUS, for appellant. BLACKWELL & AGEE, for appellees.

THOMAS, J.—This is ·an action under the statute for the · recovery of a small strip of land, brought by the children of Martha A. Harris, deceased, against Javan J. Smith, the appellant. In the first· count the plaintiffs sued for the recovery of the S. W. ¼ of the S. W. ¼ of section 10, township 18, range 9, in Clay county, Ala.

By special pleas defendant disclaimed possession "of all the 40 sued for in said count of the complaint lying east of and in₎ an easterly direction from a line running with an old fence or hedgerow, running in a northerly and southerly direction along the western part of said 40," and also pleaded not guilty "to all of said 40 lying west of an old hedge or fence row running in a northerly and southerly direction along the western part of said 40." The real contention of the plaintiffs was that the land sued for was in section 10, while that of the defendant was that it was in section 9.

(1) In each of the recent cases of *Wade v. Gilmer,* 186 Ala. 524, 64 South. 611, and *Oliver v. Oliver,* 187 Ala. 340, 65 South. 373, the verdict was declared not to respond to the issue by designating the true boundary line by the name of the surveyor.

The verdict ·in the case before us was different, in that it found for the plaintiffs "on defendant's plea of disclaimer and of the general issue, and for all of the land sued for, to wit, S. W. ¼ of S. W. ¼ of section 10, township 18, range 9, Clay county, Ala.," and further found that "the Caldwell and Curry survey is the true divisional line between the plaintiffs and the defendant." Under the issue submitted to the jury, the judgment predicated on this verdict, that the plaintiffs recover of the defendant the S. W. ¼ of the S. W. ¼ of section 10, township 18, range 9, was not erroneous. But that part of the judgment declaring the Caldwell and Currey line between the lands of plain-

tiff's and those of defendant to be the true line was indefinite, and afforded no sufficient guide to the sheriff in the premises. —*Foreman v. Redman* (Ky.) 5 S. W. 556. A suit in chancery would lie to establish what this disputed boundary line between the plaintiffs and defendant was.—Code 1907, § 3502; 6 Pom. Eq. Jur. (3d Ed.) § 694 et seq.

(2) The objection to the verdict which we have pointed out is not made by appellant. If such objection had been made, the answer would be that the verdict and judgment under the plea of not guilty was for area specifically described (*Martin v. Howard,* 193 Ala. 477, 68 South. 982; *Bradford v. Sneed et al.,* 174 Ala. 113, 56 South. 532), and was not a verdict on a suggestion to the court of a disputed line under section 3843 of the Code. While not required by the statute, the "suggestion to the court" should point out the true boundary line between the plaintiff and the defendant, thus aiding the court in expeditiously making up the issue to be submitted to the jury—"the question of the true location of the line."

(3) There was no misjoinder of causes of action. The several tracts of land sued for were specifically described, and might have been embraced in one count. The fact that they were claimed in separate counts could not result in a misjoinder. The demurrer to the complaint was properly overruled.—Code 1907, § 5367; *Brown v. Loeb,* 177 Ala. 106, 58 South. 330. At the trial the second and third counts of the complaint were withdrawn.

(4) Plaintiffs offered in evidence a deed from D. C. and R. A. Harris, of date April 10, 1894, to Martha Ann Harris, to the land sued for in the first count, to the introduction of which deed the defendant objected, assigning as specific grounds that it was "incompetent evidence," that "it was not shown that D. C. and R. A. Harris were in the possession of the lands conveyed," and that the instrument was "indefinite as to the title" conveyed. When specific objection is made, all other objections are waived. —Rule 33, Circuit Court (page 1527 of the Code of 1907) ; *B. R., L. & P. Co. v. Saxon,* 179 Ala. 136, 59 South. 584; *So. Ry. Co. v. Gullatt,* 158 Ala. 502, 48 South. 472.

(5, 6) The granting clause of this deed was to "Martha Ann Harris during her natural life for her sole and separate use," and the habendum clause was "to have and to hold unto the said Martha Ann Harris during her natural life for her sole and sep-

arate use, and after death to go by way of remainder over to her heirs." The estate thus created is to be determined, not alone by the words used, but by the situation and circumstances of the parties, the context of the instrument, and the fact that the instrument was or was not written by a person acquainted with "the use of legal technical words."—*Findley et al. v. Hill et al.*, 133 Ala. 229, 32 South. 497; *Castleberry v. Stringer*, 176 Ala. 250, 57 South. 849. At the time the conveyance was executed to her by her parents Martha Ann Harris was childless and unmarried. Thereafter she married Mr. H. T. Bachus, and left at her death Hoyt B. Bachus, Cameron W. Bachus, and Hiram H. Bachus, the plaintiffs in the court below, suing by H. T. Bachus, their next friend and father.

A consideration of the deed convinces us that it was drawn by one who understood the use of the words "during her natural life for her sole and separate use, and after her death to go by way of remainder over to her heirs," and that the grantor intended to create a life estate in Martha Ann Harris, with remainder to her heirs at law at the date of her death.

(7) The case of *Dake et al. v. Sewell et al.*, 145 Ala. 581, 39 South. 819, relied on by appellants, has no application here. It was there held that the husband took a life estate, by curtesy, in the real estate inherited by his deceased wife from her father's estate, with remainder in the children. The rule in *Shelley's Case*, to favor the transmission of estates by descent and to prohibit transmission in lines of succession by means of deeds or wills, instead of the law of inheritance, was abolished by section 1304 of the Code of 1852 (January 17, 1853), and this section was carried into the subsequent Codes. As section 3403 of the Code of 1907 it is as follows: "Where a remainder created by a deed or will is limited to the heirs, issue, or heirs of the body of a person to whom a life estate in the same property is given, the persons who, on the termination of the life estate, are the heirs, issue, or heirs of the body of such tenant for life, are entitled to take as purchasers by virtue of the remainder so limited to them."

In *Carter et al. v. Couch*, 157 Ala. 470, 47 South. 1006, 20 L. R. A. (N. S.) 858, the words of the conveyance there construed created a "fee-tail estate" that was raised by statute to a fee absolute.—Section 3397, Code. The husband was in such case en-

titled to curtesy in the wife's lands, with remainder to her heirs at law.

(8-11) In the instant case no fee-tail estate was created by the deed sought to be introduced. The remainderman did not take as heir or by descent, but under the conveyance as a purchaser.—*Duffy v. Jarvis* (C. C.) 84 Fed. 731; *McQueen v. Logan,* 80 Ala. 304; *Wilson v. Alston,* 122 Ala. 630, 25 South. 225. The estate created by the deed falls within the express terms of the statute. The husband of Martha Ann did not come within the remainder created by the deed "to her heirs," but the plaintiffs were such remaindermen. No life estate by curtesy existed in the husband.—*Findley et al. v. Hill et al.,* 133 Ala. 229, 32 South. 497; *De Bardelaben v. Dickson,* 166 Ala. 59, 51 South. 986; *Castleberry v. Stringer,* 176 Ala. 250, 57 South. 849. The termination of the life estate being shown, the remaindermen, to maintain ejectment, must show title by introduction of the deed in question.—*Dake et al. v. Sewell et al., supra; Williams v. Woodruff,* 138 Ala. 125, 35 South. 122.

(12) The burden is on the plaintiffs to establish their prima facie right to recover, by showing the death of the life tenant, that plaintiffs were the remaindermen created by the deed, and that the grantor was in possession of the lands when the deed was made, or by showing a regular chain of title to them from a grantor in possession, or from the government.—*Driver v. King,* 145 Ala. 591, 40 South. 315; *Jackson Lumber Co. v. McCreary et al.,* 137 Ala. 278, 34 South. 850; *Florence B. & I. Ass'n v. Schall,* 107 Ala. 531, 18 South. 108. This is clearly shown by the evidence to have been met.

(13) There was no error in allowing the witness to state that Daniel C. Harris claimed the land in question "to that stob," that said Harris was present "when the stob was driven down," and took Martha Ann and her husband, pointed out the lines and located the corner, and put them in possesion of land to the Caldwell and Curry line. The grantor, Dr. Harris, being dead at the time of the trial, it was competent to show his claim of ownership in connection with the survey, that he placed the "stob" as a monument of his boundary line, and was completing his gift to his daughter by pointing out the lines to her and her husband.—*Payne v. Crawford,* 102 Ala. 387, 14 South. 854; *Barrett v. Kelly,* 131 Ala. 378, 30 South. 824; *So. Iron Works v.*

*Central of Ga. Ry. Co.*, 131 Ala. 649, 31 South. 723; *Hornsby v. Tucker*, 180 Ala. 418, 61 South. 928.

(14, 15) W. E. Curry, as a witness, testified that he had been a public surveyor for 27 years; that he surveyed the line involved in this suit, between sections 9 and 10, and knew the well-established corners in the county near the land in question; that he and another surveyor, named Caldwell, took as a starting point one of these well-established corners and ran the lines. Over the defendant's objection and exception, the witness was asked this question: "Now, in your opinion as a surveyor, would that line, as run there by you and Mr. Caldwell as surveyors, make a true line between sections 9 and 10?"

All bounds and starting points are questions of fact to be determined by the testimony.—*Cronin v. Gore*, 38 Mich. 386. As an expert the witness might express an opinion.—Greenleaf on Ev. (16th Ed.) § 140, and authorities cited on page 229. He has given the jury the facts of the survey made by the witness and Caldwell.

(16) The witness Jones was asked: "Do you know where the Caldwell-Curry survey that was made in 1897 or 1898 ran with reference to these lands?"

It was not an opinion that was called for, but the fact of a definite line of survey. There was no error in allowing the witness to answer: "Yes, sir; I know; it ran right along with the original survey—the old section line. I could tell it by the old marked trees on the north end of the line."

(17) The father of the plaintiffs, as a witness, having testified to the delivery of the land in question by the grantors to the mother of the plaintiffs, it was competent to inquire of the possession of the lands east and west of the "iron stob," and to allow the answer that Dr. Harris was in the possession of same at the time he showed witness the land in question.

(18) This witness testified that, as agent for his wife and children, he went to the line and found the corner moved and a rock set up, and that thereafter the defendant claimed the rock as the corner. The witness was then asked to "state whether or not before that time he [defendant] had asserted any claim to this land that was east of the iron stob, so far as you had ever heard of," and, over defendant's objection, he answered, "No, sir; I never heard any complaint." Under defendant's plea

of not guilty, there was no error in admitting this question and answer.

The several assignments of error as to questions propounded to the witness Charlie Payne have been examined and are found to be without merit.

(18) Assignments 21, 22, 23, do not indicate error. The questions did not inform the court of the relevancy of the answers sought to be elicited.—*B. R., L. & P. Co. v. Barrett,* 179 Ala. 274, 60 South. 262. The question, "Now did you run from the Dermitt corner?" was properly refused as leading. The witness should have related the facts of his survey.

(20) The right of the court on trial to confine the examining of a witness to one counsel on each side is declared in rule 18, Circuit Court Practice (page 1522, Code of 1907).

(21) The defendant, as a witness, testified that the line run by Caldwell and Curry did not extend to the old hedgerow; that the chain Curry was using was measured after he had been running two or three days and found to be an inch too long; that he had made no allowance for the overlength of the chain; and that after the defect in the chain was discovered Curry did not go back to the corner to resurvey. Defendant's counsel then asked the witness the questions: "Did he ever tell you that the chain was overlength?" "Did he ever after that time tell you that the chain had been shortened?"

Objection by plaintiffs to each of the questions was sustained by the court. The questions referred to W. E. Curry, who had testified to making the survey with Caldwell, and to its correctness. The sufficiency and accuracy of the instrument with which Curry made his survey was a pertinent inquiry; yet witness Curry had stated that his chain was a quarter of an inch overlength, and that they made allowance for the overlength. No proper predicate was laid for the impeachment of the witness as to this overlength.

(22) It is a general rule that acts and declarations of coterminous landowners may be shown, as circumstances to be considered by the jury, together with the other evidence, in determining whether that line be one "made" by agreement or by acquiescence of the parties, or by a private or a government survey. The questions embraced in the thirtieth, thirty-first, and thirty-second assignments of error properly sought to inquire of the acts and declartions of Dr. Harris and of the Smiths, the

coterminous landowners of sections 9 and 10, as shedding some light on the location of the true line as marked by monuments indicated or set up by the government.—*Sitz & Co. v. Herzberg-Loveman D. G. Co.*, 194 Ala. 237.

The defendant having disclaimed title to all of the S. W. ¼ of the S. W. ¼ of section 10 east of the old fence or hedgerow, and pleaded not guilty as to all of said 40 lying west of said old fence or hedgerow, one of the questions at issue was the right of possession and the title of the plaintiffs to that part of said quarter section west of said old fence or hedgerow. The monuments and their exact locations, as adopted by the government engineers, to indicate the true line between sections 9 and 10 of that township and range, were the subject of inquiry under this issue. These monuments consisted of markings on trees along the line of the survey, and of established corners indicated by the government field notes of certain distances and angles from some point, usually marked by a stone or tree or water-course or other designated or physical evidence. The possession of lands on each side of these monuments indicating the true line of the government surveys began years ago when the earlier owners had a better opportunity for recognizing, and holding their lands with reference to, these monuments of the government surveys. If the old fence or hedgerow was erected and treated by the former owners as the true monument of the section line between them, and Dr. Harris and Mrs. Smith many years ago, and down to the termination of their holding of the lands on each side thereof, recognized such fence or hedgerow as the monument marking this government survey, this was competent evidence, for the consideration of the jury, with the other evidence, as tending to locate where the government survey was. Since there were several surveys locating different lines as the government survey, that Dr. Harris, the grantor of the deed in question and the ancestor of plaintiffs' mother, and defendant and his predecessor in title, recognizing the fence or hedgerow as the monument of the true line between sections 9 and 10, made this testimony the more important as tending to show where the true line was, as originally fixed by the United States surveyors.

For the error of the court in sustaining objections of plaintiffs to questions calling for testimony showing how the coterminous landowners held the lands on both sides of the hedgerow, the cause must be reversed.

In *Taylor v. Fomby*, 116 Ala. 621, 22 South. 910, 67 Am. St. Rep. 149, a fence had been erected on a line established as the dividing line, and it was there held that evidence as to the recognition of this line could be considered by the jury as a circumstance, together with all the other evidence in the cause, "as determining where the true line had been run by the United States surveyors."—*Barker et al. v. Mobile Elec. Co.*, 173 Ala. 28, 55 South. 364; *Wyman v. Walker*, 177 Ala. 75, 58 South. 403; *Cooper v.. Slaughter*, 175 Ala. 211, 57 South. 477; 1 Greenlf. on Ev. (16th Ed.) § 140 N; Jones on Ev. § 398.

(23) This is not in conflict with the rule declared in *Oliver v. Oliver*, 187 Ala. 340, 65 South. 373. The plea of not guilty as to the lands in question lying west of the old fence or hedgerow, raised every issue, except that of "since last continuance" (6 Mayf. Dig. 285, § 7), and rendered the evidence competent. Where a defendant is claiming title by adverse possession, general reputation of ownership may be given in evidence.—*Johnson v. Rhodes*, 62 Fla. 220, 56 South. 439; *Maxwell Land Grant Co. v. Dawson*, 151 U. S. 586, 14 Sup. Ct. 458, 38 L. Ed. 279; *Sparrow v. Harvey*, 44 Mich. 63.

(24) It was competent to show that the defendant moved his pasture fence from its former location to the Caldwell and Curry line, on the south side of section 10. The defendant's pasture being along the north side of section 15, the fact that after the survey he moved this fence a rod or more north, and on the line between sections 10 and 15, as that line was established by Caldwell and Curry in running the lines of the several sections to ascertain the true line in dispute between sections 9 and 10, sheds light upon the testimony of the defendant. That he adopted the Caldwell-Curry survey as the true line between sections 10 and 15, where it was to his interest to do so, and repudiated that survey, and by his testimony sought to show that it was incorrect, where it was against his interest, was a circumstance that might be given to the jury. The trial court properly allowed the witness to answer the questions calling for this evidence.

In *McLester. Building Co. v. Upchurch*, 180 Ala. 23, 60 South. 173, Chief Justice Anderson collects the authorities defining what amounts to adverse possession between coterminous landowners, and when a line, not the true boundary line, but treated as such by the parties, actually becomes the true boundary line between

[Smith v. Bachus, et al.]

them, and when it does not amount to such. The opinion quotes as follows: " 'Possession to be adverse must be held under claim of right, and there can be no adverse possession without an intention to claim title. Hence it is essential to the proper determination of the character of the possession to consider the intention with which it was taken and held. If one occupies land up to a certain fence because he believes that to be the line of his land, but not having any intention to claim up to the fence, if it should be beyond the line, the intent to claim title does not exist coincident with the possesssion, and the possession up to the fence is not therefore adverse. Where, however, the coterminous owners agree upon a line as the dividing line and occupy up to it, or when one of them builds a fence as the dividing line and occupies and claims to it as such, with knowledge of such claims by the other, the claim is presumptively hostile and the possession adverse.'—*Hess v. Rudder,* 117 Ala. 525 [23 South. 136, 67 Am. St. Rep. 1802]."

(25, 26) If Dr. Harris and the Smiths claimed to the hedgerow, believing it to be the true line between sections 9 and 10 and not intending to claim any further than the true line, and if it developed that the hedgerow was not the true line, but that some other survey was the true line of said sections, then, under such circumstances, the holding of the Smiths was not adverse to the holding of Dr. Harris. But if the Smiths held possession of the land on the west side of, and up to, the hedgerow, and Dr. Harris held possesssion of the land on the east side of, and up to, the hedgerow, and each held to the hedgerow as the true line between them, then possession to the hedgerow of each would be adverse to that of the other. The trial court correctly charged the jury on this point, and left the question of fact—of the character of the possession of these coterminous landowners—to the jury for decision.

It will not be necessary to consider at length the many given and refused charges assigned as error. The statement of law herein made will serve to guide the court in another trial.

For the ruling of the court on evidence as pointed out in the thirtieth, thirty-first, and thirty-second assignments of error, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.