(104 So. 390)

### GUNN v. PARSONS. (8 Div. 739.)

(Supreme Court of Alabama. April 16, 1925. Rehearing Denied May 28, 1925.)

1. **Evidence** ⊜⇒273(2)—**Declarations of ownership and possession by former owners in possession competent evidence of claim of ownership.**

Declarations of ownership and possession by former owners in possession or nature thereof is competent evidence of claim of ownership of land.

2. **Adverse possession** ⊜⇒66(2) — **Possession for 10 years up to agreed division line or fence erected under honest belief that it is on true line gives perfect title.**

If two owners of adjacent lands agree on location or division line, and hold possession for 10 years, claiming to such line, or fence is erected by one under honest belief that it is on true line, and his possession up to it is continued without interruption for 10 years, title becomes perfect without regard to true location of line.

3. **Adverse possession** ⊜⇒66(1)—**Holding with intent to hold to certain line whether true one or not is adverse.**

Claim or possession by adjoining landowners to line believed to be true boundary, without intent to hold beyond it, is not adverse to each other's right or title, but holding with intent to hold such line whether true one or not is adverse.

4. **Trespass** ⊜⇒20(1)—**Legal owner deemed in possession.**

Where two persons claim actual possession of same land, one who has legal title is deemed in possession, under Code 1907, § 2456.

5. **Property** ⊜⇒9—**Landowner presumed owner of timber.**

Owner of land is presumed to be owner of timber thereon, in absence of evidence to contrary.

6. **Adverse possession** ⊜⇒115(5) — .**Whether possession was claimed up to certain line as true one or without regard to such line held for jury.**

Whether one sued for damages for cutting and removing timber, and having possession of land to bluff and fence, claimed possession to that line as his, or whether he claimed possession of land without regard to the line and his holding thereto, *held* for jury.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Trespass ⊛—27—One in actual possession of land on one side of supposedly true division line not guilty of trespass in cutting timber.**

One in actual possession of land on one side of bluff and fence, mistakenly supposed to be true line, is not guilty of trespass in cutting timber therefrom.

**8. Money received ⊛—19(4)—One can recover from adjoining owner no more than amount received by latter for timber removed from former's land.**

Under count for money had and received for timber cut and removed from plaintiff's land, plaintiff could recover no more than moneys received for timber sold by defendant to company taking it.

**9. Trespass ⊛—25—Landowner, pointing out dividing line to adjoining owner, estopped to claim damages for timber cut on latter's side of line.**

Landowner, pointing out dividing line between his and adjoining owner's land as that pointed out by latter to company to which he sold timber on his land, is estopped to claim damages from adjoining owner for timber cut on latter's side of line so indicated.

Appeal from Circuit Court, Madison County; James E. Horton, Jr., Judge.

Action by R. A. Parsons against I. I. Gunn. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

Defendant objected to this excerpt from the court's oral charge:

"Now, gentlemen, you will consider the timber which you find that the defendant himself cut, and all the timber which the Holland-Blow Stave Company cut within the inclosure of the plaintiff, or at least east of the line shown the Holland-Blow Stave Company to be the line by the defendant himself. In other words, gentlemen, it is undisputed in this case, as the court understands the evidence, that the defendant showed the Holland-Blow Stave Company a line, and that that line was west of the true line, and that in making his deed to the Holland-Blow Stave Company he pointed out the timber he sold them as standing on the land which was within the inclosure of the plaintiff in this case, and it is the value of that timber or the damage for cutting that timber which the plaintiff in this case is entitled to."

R. E. Smith, of Huntsville, for appellant.

Defendant was entitled to the affirmative charge. Pruitt v. Ellington, 59 Ala. 455; Burger v. Peerless Co., 197 Ala. 470, 73 So. 77; Terry v. Williams, 148 Ala. 468, 41 So. 804. Plaintiff's recovery under count 9 was the value of hickory timber cut by defendant and of the price of oak timber sold to Holland-Blow Stave Company by defendant. Allen v. Mendelsohn, 207 Ala. 527, 93 So. 416, 31 A. L. R. 1063. Plaintiff could not recover under counts 6 and 7, unless he was in pos-session of the lands at the time of alleged trespass. Pollard v. Pollard, 207 Ala. 270, 92 So. 488. And, if entitled to recover at all, he was not entitled to recover more than the market value of the timber cut and removed by defendant. Taylor v. Smith, 104 Ala. 537, 16 So. 629; Drake v. Lady Ensley Co., 102 Ala. 501, 14 So. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77.

Lanier & Pride, of Huntsville, for appellee.

Bare possession or title will support an action for wrongful interference or trespass. Code 1907, §§ 2454, 2455, 2456. Evidence of mere occasional trespass upon wild land for purpose of removing timber is not sufficient to show adverse possession. The owner of the land is presumed to be the owner of the timber. Williams v. Lyon, 181 Ala. 531, 61 So. 299. Where adjoining landowners hold to a line they believe to be the true line, not intending to hold beyond the true line, such claim and possession of the one is not adverse to the rights of the other. Gibson v. Gaines, 198 Ala. 585, 73 So. 929. Plaintiff may maintain action, though he has no actual possession. Powers v. Hatter, 152 Ala. 636, 44 So. 859; Street v. Nelson, 80 Ala. 230; Aldrich Min. Co. v. Pearce, 169 Ala. 161, 52 So. 911, Ann. Cas. 1912B, 288; Oswalt v. Smith, 97 Ala. 627, 12 So. 604.

THOMAS, J. The action was to recover damages for cutting and removing timber. The trial by the jury was on counts 6 and 7, trespass to land or actions on the case; 9, for money had and received; and 10, for conversion of oak and hickory timber. The general issue was pleaded, "with leave to offer in evidence any matter or thing that, if specially pleaded, would be a good defense." There was verdict for plaintiff. Counts 5 and 8 were eliminated by the charge of the court.

The evidence showed that plaintiff owned the land indicated in the counts during the years 1919 to 1922, inclusive; that for the same period defendant owned adjoining lands to the east, south, and west of plaintiff's said 80-acre tract of land. The exact dividing line was apparently unknown to the parties at the time; it being wild or uncultivated woodland. The lines were thereafter established by a surveyor in 1923. A line along the "bluff" or gaps or passes therein was marked by a wire fence, and supposed by a prior owner and one of the parties to have been the line between the respective properties. To this line defendant and Lipscomb, his predecessor in title, had pastured cattle, and such was the fact according to defendant's evidence at the time the timber in question was cut between the bluff and the east line established by the surveyor, Mr. Jones. Plaintiff admitted he saw the wire before the timber was cut. There was con-

flict in the evidence as to whether plaintiff told defendant this dividing line—east and west—was along the bluff.

The witness May testified that the timber was cut considerably east of the bluff; that defendant said he did not know where the dividing line "was until it was run out"; that defendant told plaintiff "that before the line was surveyed he thought it ran along the edge of the bluff, and that he, the defendant, owned the land up to the bluff."

Plaintiff's witness Glen Parsons testified of conversations between defendant and his (witness') father in the nature of admissions and offer to pay the damages; that before the timber was cut defendant proposed to plaintiff that they run the line between them, "and build a fence there and go fifty-fifty on it"; that they admitted they "didn't know where the line was," but that "they thought it was somewhere below the bluff." That witness also stated that there were wires in "two places along the bluff," and when the south end of the bluff was reached the wire proceeded in a southern direction.

Defendant's witness Gibson testified he was an agent of Holland-Blow Stave Company, purchasing the oak timber from defendant; that his company cut to said line "up to the bluff" and east thereof; that when he was preparing "to cut this timber, and after Mr. Gunn had showed us where he thought the line was, the plaintiff and myself (Gibson) went all over the mountain * * * around the bluff, * * * and plaintiff showed me (witness) where the line was, or where he thought it ran. There were two strands of wire strung along this bluff, and he pointed that out, and told me (witness) that the line was somewhere near that fence, and the timber which we cut was east of that fence, and east of the line as pointed out by Mr. Parsons where he said he thought the line was. * * * We cut up to within about 30 or 40 feet of the fence, east of it." The same witness testified on cross-examination that "defendant, before we cut this timber, showed me where he thought the line was, or where it was supposed to be, and the plaintiff showed me the same line, and in cutting the timber we cut up to this line on the east of it on the side where we thought the defendant's land came to, and as pointed out by the plaintiff and the defendant to me. Mr. Gunn and Mr. Parsons, neither one, seemed to know exactly where the line was."

Defendant's immediate predecessor in title, John Lipscomb, testified he owned the land 5 or 6 years before he sold to Gunn; that he built the pasture fence on the bluff on the west side of the tract sold Gunn; that he was in possession of the land up to this fence until he sold to Gunn; that he purchased the land from Brooks, whose agent (Gardner) told witness the line between these tracts of land "was above and along the top of the bluff," and, when witness "built the cattle or pasture fence," he built it "on my (his) side or east from where Gardner said the dividing line was," and "where Mr. Cobb said it was."

The witness Baker testified he pointed out the line to Lipscomb when purchasing from Brooks "as lying along the bluff," and there was a fence there at that time; that Lipscomb built the fence there and pastured his cattle within the inclosure. The witness declared on cross-examination: "I knew where the line was as good as anybody else"; that there was a corner rock north of this 80-acre tract which Parsons told witness "was a corner rock," and the corner rock as then located was "about a quarter of a mile from where they have the line now."

The witness Clarence Gardner testified he sold the Brooks place to Lipscomb, and "we all were informed and thought that the line lay along the bluff."

The witness Drake testified that he asked plaintiff about buying his timber, and how far it "ran east of the bluff," and he replied "at the time that Gunn's timber had been cut to the line, and for me to cut to the bluff; that the timber had been cut east of the bluff"; and that he did not know exactly where the line was until a survey was made.

The witness John Davis testified that he, defendant, and plaintiff were on the land in 1921, and Parsons said the line was along the edge of the bluff; that this was at the time the Holland-Blow Stave Company were cutting their timber east of the bluff. "Mr. Gunn and Mr. Parsons were talking about the line; * * * that is what they went there for. Mr. Parsons is the one that said the line was along the edge of the top of the bluff, and at that time Parsons didn't claim the timber that the Holland-Blow Stave Company was cutting east of the bluff, and didn't tell Mr. Gunn that it was his timber. * * * I went up there because Parsons and Gunn asked me to go. Mr. Gunn said he didn't know where the line was."

The testimony of Robert Russell tended to show the possession of the land to the wire fence along the bluff when the hickory was cut, and so of the possession when the stave company cut the oak; and Earl Gunn testified he always "understood that the bluff was considered the line between the property of the defendant and the plaintiff"; that the fence was placed along the bluff when Lipscomb "owned the place."

Defendant, as a witness in his own behalf, testified that he purchased from Lipscomb; that there was a fence along the bluff, and the lands east thereof were in pasture; that when the "bluff turned west the fence continued south"; that, when the timber was cut, he did not know about the line, "except what people told" him; that Baker and Parsons had "pointed out the line to" him as being "along the bluff"; that witness thought the line between the lands "was along the

top and near to the bluff"; that when he and Parsons were there looking "at his timber we walked along the bluff, and at the time Mr. Parsons said that the bluff was the line." Witness denied that he made positive promises to pay for the timber, and stated that he was willing to do what was right.

Plaintiff denied that he told Gibson where the line was, saying he never saw him (Gibson) up there on any occasion; that he told him he "did not know where the line was"; that he did not tell defendant, Drake, or Gibson, or Baker it "was along the bluff" or where the "line was"; that he did tell Drake he was "going to have the line located."

Thus the evidence was in conflict, or there was evidence from which the jury might reasonably draw unfavorable inference to the party asking for and given the affirmative instructions.

[1, 2] The declarations of ownership and possession by former owners in possession or the nature thereof is competent evidence to show claim of ownership. Smith v. Bachus, 195 Ala. 8, 70 So. 261. And it is declared that, if two owners of adjacent lands agree upon the location or division line between them, and each hold possession for 10 years, claiming to said dividing line, the title becomes perfect, without regard to the true location of the boundary line between them; and, if a fence is erected by one, without agreement with the other, but under the honest belief that he is putting it on the true line, and his possession up to the fence is continued without interruption for 10 years, he acquires a perfect title. Hoffman v. White, 90 Ala. 354, 7 So. 816; Smith v. Bachus, supra; Id., 201 Ala. 534, 78 So. 888; Hopkins v. Duggar, 204 Ala. 626, 87 So. 103.

[3-5] It is further established in this jurisdiction that, where adjoining landowners hold to a line believed to be the true line, not intending to hold beyond the same, such claim or possession is not adverse to the right or title of the other; however, if they intended to hold to that line, regardless of whether or not it was the true line, such holding is adverse. Gibson v. Gaines, 198 Ala. 583, 73 So. 929; Smith v. Bachus, supra. And, where two persons claim to have actual possession of the same land, he is deemed in possession who has the legal title (Code 1907, § 2456); and the owner of land is presumed to be the owner of timber situated thereon (Williams v. Lyon, 181 Ala. 531, 61 So. 299), in the absence of evidence to the contrary.

[6] The important question of fact for the jury was the extent and nature of defendant's holding before and at the time the timber was severed. Having possession of the land to the bluff and wire fence, was it, in his belief, a possession up to that line, as his, or was it a possession of what he supposed to be the land he actually owned, without regard to the line indicated and his holding thereto?

We have indicated that defendant's predecessor in title placed the wire fence along the bluff, pastured cattle therein and thereto, and "was in possession of the land up to this fence until I (he) sold them (the lands in question) to Gunn." The same adverse inference may be found in the testimony of the witnesses Baker and Earl Gunn. Thus a jury question was presented as to the nature of the holding to the west fence along the bluff. There are reasonable adverse inferences that may be drawn by the jury from this evidence, and the affirmative charge should not have been given. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

The jury might have reasonably inferred from the evidence that both Parsons and Gunn thought the line ran along said fence and bluff, and so established it as their line, and that thereafter the timber was cut east thereof; that plaintiff saw the Holland-Blow Stave Company cutting the oak timber from the land east of said established line, and made no objection or claim of ownership, was present with defendant, and made no claim to a different line and to the land east thereof and to the timber being cut.

[7] It is true there is a tendency of evidence to the effect that the parties were honestly mistaken as to their true lines. The actual possession east of and to the bluff and fence at the time the hickory and oak timber was cut was with defendant; he could not therefore have been guilty of trespass in the matter of cutting the timber under the counts for trespass.

[8] The action, equitable in nature, was declared in count 9 for money had and received. Did, then, the court erroneously instruct the jury as to the measure of damages under this count for the oak timber? Due exception was reserved to that instruction. In event of recovery, plaintiff could not have moneys under the ninth count in excess of those defendant received from the Holland-Blow Stave Company for the oak timber sold.

[9] In this connection it will be remembered there is a tendency of evidence that plaintiff pointed out the dividing line between himself and Gunn as that pointed out by defendant to the stave company's agent, and that this was done before or at the time the oak timber was cut. If the stave company did not cut oak timber west of the line so indicated to them by plaintiff, and this is shown by the evidence of their agents, the plaintiff is estopped to claim damages for timber cut by the stave company pursuant to his consent under the circumstances or by his direction. Snodgrass v. Snodgrass, 212 Ala. 74, 101 So. 837; Ivy v. Hood, 202 Ala. 121, 79 So. 587.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.