[No. 9595.   Department One.   December 2, 1911.]

T. Y. RIPPEY *et al., Respondents,* v. BENJAMIN F. HARRISON *et al., Appellants.*[1]

BOUNDARIES—EVIDENCE TO ESTABLISH—SUFFICIENCY—ADVERSE POSSESSION—ESTOPPEL.  Upon a dispute as to the true location of a line between two lots, plaintiffs failed to sustain the burden of proof and are estopped to assert title to a strip 2.44 feet wide outside of their fence, where it appears that they built a fence upon what they supposed was the true line and maintained the same and made no claim to the additional strip for thirteen years, and defendants bought the adjoining lot supposing the fence to be on the line and held possession for more than ten years; there also being evidence on the part of defendants that the fence was set on the line marked by the original stakes, and was pointed out as the line by the common grantor (PARKER, J., dissenting in part).

Appeal from a judgment of the superior court for Kitsap county, Yakey, J., entered December 21, 1910, upon findings in favor of the plaintiffs, in an action to quiet title, after a trial on the merits.   Reversed.

*Bryan & Ingle,* for appellants.
*Jas. W. Carr,* for respondents.

DUNBAR, C. J.—The respondents brought this action to quiet title to a certain strip of land in dispute.   The following map will show substantially the location of the land:

There is some contention by the respondents that this plat does not show the true line between lots 11 and 12; but,

[1]Reported in 119 Pac. 178.

with the view we take of the case, this is not material. The respondents were the owners of lots 8, 9, and 10, and the appellants of lots 11 and 12. The matter in dispute is the correct line between lots 10 and 11. The respondents purchased the land on March 4, 1898, and had a contract to purchase prior to said date. Respondents, soon after purchasing the property, and thirteen years preceding 'the time of the trial in the court below, took possession of said property and built a line fence on what they then believed to be the east boundary line of lot 10. That fence has stood there since, and is still standing as originally located. This fence is 2.44 feet west of what respondents now contend is the true east boundary of said lot 10. The appellants' contention is that the fence is on the correct boundary line, and they base their claim upon the propositions, (1) that the fence was constructed upon the original survey stakes and according to the first survey made, and that the first survey governs regardless of the same being correct or incorrect; and (2) that they are entitled to said strip by reason of adverse possession of same for a period of greater than ten years. The trial court held that the true line was as contended for by respondents, and the prayer of the respondents was granted, and judgment entered quieting the title to the same.

We are unable to agree with the conclusion reached by the trial court, although the case is not without difficulty by reason of the indefinite and unsatisfactory character of the testimony. We may admit the general rule that monuments control courses and distances; but there are no original monuments discovered in this case, and the object of a survey when a line is in dispute is, not to determine where the original location ought to have been, but where it actually was; because a purchaser has a right to be protected in the land which he buys with reference to the original monuments or locations, whether they were right or wrong.

The court, in reviewing the testimony, said: "There is

nothing to show that there were any stakes to mark the line when Mr. Eriksen and Mr. Rippey made this fence." It is true that neither Mr. Eriksen nor Mr. Rippey stated that there were any stakes to mark the line, although they both stated that they thought they were building the fence on the line, but Mr. Jensen, the grantor of the appellants, who was the owner of lots 11 and 12 from 1893 to the date of the deed from him to Harrison; and who purchased the lots from Bremer, the respondents' grantor, testified that he had found a stake on the west boundary of lot 11, and a hub in the alley on the east side, before the building of the fence, and that he knew that the stakes were surveyor's stakes; and further testified as follows:

"Q. Now, with reference to the fence that was built later, how did that correspond with the west boundary of lot 11 according to these stakes? A. The stakes were there at the time the post holes were dug. Q. Then the holes were made and the fence built on the line? A. Yes. Q. You never had any talk after that about the fence being on the line? A. No. Q. That was the line according to the stakes? A. That was always the line. . . . Q. Mr. Jensen, did you at the time you bought the lots get any abstract? A. Yes, I did."

And it appears from the testimony that the abstract which Jensen got and which was transferred to the appellants showed the line to be as contended for by the appellants. Mr. Jensen also testified that he measured the distance with a tape, and that the line as indicated by the fence was pointed out to him as the line by Bremer, the common grantor.

The testimony of the surveyors failed to throw any light upon the merits of the case, but it appears from the record that, thirteen years prior to the purchase of these lots by the appellants, respondents had established the line between lots 10 and 11 which they thought to be the true line, and which, according to the testimony of Jensen, followed the line of the surveyor's stakes by the erection of a fence. This in a sense was a monument which they recognized, and which

they held out as the true line; and while a man is not compelled to fence in all his land, yet under the circumstances shown by the testimony, their action led the appellants to believe that the fence was the line, and they bought with that understanding and respondents should be estopped from now dispossessing innocent purchasers, even though they have proved—which they have not to our satisfaction—that the true line is as they claim it to be.   They testify that, during all these years, they never had made any claim to this small strip of land to Mr. Jensen, who owned the land adjoining them.   If their theory is correct, according to the testimony they have 2.44 feet more of land than they thought they were purchasing.   The burden is upon the respondents, the plaintiffs in the case, to establish their claim, and we think they have not done so.

The judgment will be reversed, with instructions to dismiss the action.

GOSE, MOUNT, and FULLERTON, JJ., concur.

PARKER, J. (concurring)—I concur in the result, but do not concur in the view that appellants are estopped by any acts amounting to a practical location upon the ground of the line between lots 10 and 11.   Having the burden of proof, they have simply failed to prove the true location of that line; and for that reason they cannot dispossess respondents.