# Chambless *v.* Jones.

### Bill to Define Boundaries.

(Decided May 11, 1916. 71 South. 987.)

1. **Boundaries; Establishment; Acquiescence.**—Where, after a survey, and with the knowledge and consent of the adjoining owner, a lot owner moved the boundary fence between the two lots to conform with the survey, the acquiescence of the adjoining owner in the survey prima facie indicated its validity, and raised a presumption of its correctness.

2. **Same; Evidence.**—The evidence examined and held to show that the boundary line was as claimed by the complainant.

[Chambless v. Jones.]

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by L. A. Chambless against T. A. Jones to enjoin a trespass and to define a boundary line. From a decree dismissing her bill complainant appeals. Reversed and rendered.

THOMAS J. WINGFIELD, for appellant. GASTON & DRENNEN, for appellee.

GARDNER, J.—Appellant, the owner of "lot 3, block 8 A. East Lake Land Company survey," in Birmingham, Ala., filed this bill against the appellee, who is the owner of "lot 4, block 8 A. East Lake Land Company survey," which lies adjacent to the lot owned by appellant. The bill alleges that the respondent has placed on said lot a building in such manner that the eaves of same project over lot 3, owned by complainant, and that the respondent has placed on the lot certain pipes connecting the said building with a sewer which passes in front of said lots; that complainant has never given respondent or any one else any right whatever to place said building on her premises or run any pipes through the same, but on the contrary has demanded that the respondent remove that part of the building on or over her premises and remove the pipes from her property. The prayer of the bill is for a mandatory injunction requiring this to be done.

Respondent answered the bill, denying the material averments thereof in respect to any of his property being on or over the premises of complainant, and setting up the statute of limitations of 10 years and adverse possession for a sufficient length of time to perfect his title up to the dividing line fence which was standing on the property at the time he purchased it. Upon submission of the cause for final decree on pleadings and proof, the chancellor denied complainant any relief and dismissed her bill. The equity of the bill is not brought into question on this appeal, the result of which rests upon the solution of a question of fact as to the true location of the boundary line between these parties. We need not discuss that phase of the answer setting up the question of the statute of limitations or that of adverse possession, as it is too clear from the evidence in the case that neither of these defenses is sustained by the proof. Nor does it appear to be insisted to the contrary by counsel for appellee.

[Chambless v. Jones.]

(1) Appellee purchased his lot a short while before appellant bought hers, and there was a fence erected dividing the two lots at the time of the purchase. It is quite clear that appellee was under the impression that the fence was on the proper and correct dividing line between the lots, but it appears, also, that within a short time after the purchase notice was brought to him that appellant questioned the correctness of the same, and in 1908 cautioned him in regard to the laying of pipes, that they be not placed on her premises. In 1911 appellant had the property surveyed by one Meade. At that time she seems to have had the matter placed in the hands of her attorney. The survey by Meade, as shown by his testimony, established that the fence was not on the line, but was over on the property of appellant. This survey fixed the dividing line some ten inches at the front of the property toward the premises of respondent. Meade, who was a civil engineer of 17 years' experience, testified to the correctness of the line as established by him. He took as his starting point a certain stone monument in the center of Seventy-Fifth street, placed there to indicate its center, and another point was an iron pipe on the west side of Seventy-Fifth street, placed to indicate a lot corner. His survey corresponded with the curb lines on the streets and it went by the map of East Lake, furnished by the East Lake Land Company, from which this property was purchased. Respondent's surveyor, Mr. Truss, testified that the stone monument was placed by him at the time he was establishing the center of the streets, and that it was a correct point. Complainant insists that respondent agreed to abide by the Meade survey, and this insistence finds support in the evidence. It clearly appears, however, that after the Meade survey respondent acquiesced therein and consented for the fence to be moved and erected on the ilne of said survey. Respondent said: "I was consulted about the moving of the fence, and it was with my permission that the fence should be set over."

The fence was so moved by the appellant in March, 1911, with the knowledge and consent of the respondent, and it seems to have so remained without objection from that time. Such acquiescence in the Meade survey by the respondent would prima facie indicate its verity and thereby raise the presumption of its correctness.—*Cooper v. Slaughter*, 175 Ala. 211, 57 South. 477; *Oliver v. Oliver*, 187 Ala. 340, 65 South. 373; *Smith v. Bachus*, 195 Ala. 8, 70 South. 261; 4 R. C. L. 69. True, respondent sought

to explain such acquiescence by evidence to the effect that he merely consented to the removal of the fence to the line of the Meade survey in order to pacify the complainant; but this appears to have been but an uncommunicated motive, and his case must be judged by his acts and conduct.

(2) Before the filing of the bill counsel for the complainant requested the respondent to remove the eaves of the house and the pipes from complainant's premises, to which respondent replied, to quote the language of the witness: "That he might, after thinking the matter over, decide to move them in preference to being a respondent in a lawsuit, and asked him that, in the event I did decide to remove them, that I be given permission to enter the property as claimed by the complainant for the purpose of moving the property."

No survey of the property seems to have been made by the respondent until after the testimony for the complainant was taken in January, 1915, after which time the property was surveyed for the respondent by one Truss. Mr. Truss in his testimony was as positive and sincere as was Mr. Meade as to the correctness of the line established by him, and the survey of the former established the original fence as the correct boundary line. Mr. Truss also was a surveyor of many years' experience. He testified to his familiarity with the East Lake survey and the map thereof, and that he had surveyed in that community and was in fact at one time city engineer of East Lake. He testified that about 10 years previous he had surveyed a lot in the same block with those here under controversy, for a Mr. Sadler, and that he therefore took the Sadler lot as a starting point, assuming the previous survey to have been correct. Truss volunteers the information that at the time he made the Sadler survey its correctness was questioned by some of the old residents of East Lake; but he insists that they were men without experience in surveying or engineering, and that they were mistaken in their contention.

The deeds of the respective parties to these lots describe them as being rectangular, while the testimony of Truss seems to indicate that according to his survey they are not rectangular. Speaking to this question, the respondent, testifying in his own behalf, said: "My deed called for a rectangle, 50 feet front, 200 feet deep. I was present when Mr. Truss, my witness, testified that the lot could not be rectangular. I am familiar with the

[Chambless v. Jones.]

line established for me, on my lot 4, by Mr. Truss. I could not state whether or not those lines make a rectangular lot. I do not know if the stakes placed by Mr. Truss make a rectanguar lot; if they do not make a rectangular lot, it would not be according to my deed. If the other lots in the block are rectangular, it would create confusion."

It is thus seen that the question of fact as to the correctness of the boundary line is a matter of much difficulty of solution. Each of the surveyors is positive and sincere as to the correctness of his own survey; but we cannot but be impressed, from the record, that the starting point of the Meade survey appears to have been such as to more surely lead to a correct result. If, however, it be conceded that the evidence in this respect is equally balanced, we should not lose sight of the testimony heretofore referred to as to the conduct of the respondent, his acquiescence for several years in the Meade survey as the true boundary line. This acquiescence creates a presumption in favor of the correctness of that survey, and we are of the opinion suffices to turn the scale in favor of the contention of appellant. The fence was placed by the appellant upon the line established by the Meade survey and acquiesced in by appellee; and the decree dismissing her bill leaves her as holding to the line of the Meade survey, but without the power to enforce her rights thereto. There was no cross-bill by the respondent, seeking the establishment of the correct boundary line.

Upon a careful consideration of the evidence in this case we are persuaded that the appellant met the burden of proof necessary to entitle her to the relief she prayed. The undisputed evidence shows that, if the Meade survey be held to be correct, then the eaves of appellee's house extend over and onto the property of appellant, and so likewise do the pipes. It therefore results that the decree of the court below will be reversed, and one will be here rendered granting to appellant the relief prayed in her bill.

Reversed and rendered.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.