ROTTMAN and others, Respondents, vs. TOFT and others, Appellants.

*May 11—October 20, 1925.*

*Arbitrations: Submission of controversy over boundary lines: Impeachment of award: Grounds: Mistake: Acquiescence of parties.*

1. An action between the record owners of adjoining tracts, holding under definite descriptions, to quiet title, is a boundary-line controversy (if there can be one), which may be submitted to arbitration under sec. 3544, Stats., as distinguished from a controversy relating to titles to land or estates in realty. p. 564.

2. In this action the location by the surveyor chosen by both parties of quarter corner and boundary lines is *held* sufficiently established by the testimony of eye-witnesses and others having personal knowledge thereof, without resort to his field-notes or map, the admissibility of which was disputed.  p. 565.

3. An award of arbitrators cannot be set aside for mere errors of judgment upon questions of fact or law submitted, but is subject to impeachment for fraud or misconduct amounting to fraud, or upon clear evidence of mistake when such mistake is not a mere wrong conclusion but an unconscious failure to know or apprehend some material fact or right in the light of which their judgment should be exercised. p. 565.

4. Where government field-notes indicated that a meander post was erroneously set out in a lake, the surveyor's mistake, if any, in locating the post elsewhere was a deliberate one, resulting from the exercise of judgment with reference to known facts, and not an unconscious mistake, for which an award of arbitrators, under sec. 3544, Stats., may be impeached.  p. 566.

5. The establishment of quarter corners and boundary lines by the surveyor is in effect the award of an arbitrator and entitled to the same weight, and hence cannot be impeached for a mistake resulting from the exercise of an honest judgment, but is binding upon the parties and their heirs and assigns. p. 566.

6. The vendor's acceptance of a reconveyance from the vendees, in accordance with the terms of a submission of a boundary-line dispute to arbitration, on dissatisfaction by the vendees with the acreage obtained and the lapse of nearly twenty years, during which time the surveyor died, without challenging the award, is *held* an acquiescence in the result of the survey.  p. 566.

APPEAL from a judgment of the circuit court for Door county: EDGAR V. WERNER, Judge. *Reversed.*

This action was brought to quiet title to the southeast quarter of the southeast quarter of section 16, township 30 north, range 28 east, lying in Door county, Wisconsin, by establishing the boundaries thereof. Plaintiffs hold the record title of the above described land. Defendants have the record title to the southwest fractional part of section 15,

township 30, range 28.   The question in dispute is the boundary line between sections 15 and 16.   This very dispute arose in 1902 between the predecessors of the present plaintiffs.

On the 12th day of December, 1901, Marion Rottman, under whom the present plaintiffs derive their title as heirs at law, owned the southeast quarter of the southeast quarter of section 16.   On that date she executed a quitclaim deed to Michael Donovan and George Morrow.   It appears from the evidence that at the time this deed was executed all parties were uncertain concerning the exact location of the section line between sections 15 and 16, and it was agreed that if the grantees in that deed were not satisfied with the amount of acreage obtained when that line was established, they might reconvey the lands to Marion Rottman, she repaying the purchase price thereof.   T. Toft, the predecessor in title of the present defendants, at that time owned the southwest fractional part of section 15.   On the 11th day of January, 1902, the following agreement was entered into between George Morrow, Mike Donovan, T. Toft, and Marion Rottman:

"For the purpose of settling the ownership of a tract of land and the timber thereon in the town of Bailey's Harbor, Door county, Wisconsin, in dispute, claimed by Mike Donovan and George Morrow to be the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ sec. 16, town 30, range 28, and by Tofts to be in fractional southwest quarter sec. 15, town 30, range 28: It is hereby stipulated and agreed by and between said Mike Donovan and George Morrow as parties of the first part and Thomas Toft, party of the second part, that the southeast corner of section 16, town 30, range 28 east, in said county, shall be located as follows by surveyor Aug. Braun of Green Bay, Wisconsin, who is hereby selected to make the survey, and he shall locate said southeast corner of section 16 by starting at any corner on the section line between sections 18 and 19 or 17 and 20, or section line between 16 and 17 running south and east, that he shall find

Rottman v. Toft, 187 Wis. 558.

upon examination to be authenticated by the minutes of the original government survey or from memory of old settlers having knowledge of the facts, and said surveyor hereby agreed upon shall retrace the government survey from the point of starting the distance given in said field-notes as being the distance from point of starting to the corners of sections 15, 16, 21, and 22. The east end of the line so found is to be the S. E. corner of said section 16, town 30, range 28.

"To make the full intent and meaning of the parties hereto more clear, each party states for illustration that if said surveyor shall start from the S. W. corner of section 17 he shall run east on the section line the distance given in the field-notes as having been run by the original government surveyors, then follow the meander line as run by the government surveyors and as appears in the field-notes of said survey around the head of the bay to the point where it strikes the line between sections 16 and 21, and thence east the distance given in the field-notes as being between the point last aforesaid and the southeast corner of section sixteen (16).

"After having located the southeast corner of said section 16, town 30, range 28, as herein agreed, said surveyor shall run the boundary lines around the S. E. ¼ of the S. E. ¼ of said section 16 and his survey of said S. E. ¼ of the S. E. ¼ of section 16 shall be final and the lines so established shall be accepted as the true lines and shall be forever binding upon the parties hereto, their and each of their heirs, executors, administrators, and assigns.

"The expenses of said surveyor shall be paid one half by each of the parties hereto, and the parties hereto shall each furnish one chainman and such other helpers as the said surveyor may need.

"In witness hereof the parties hereto have hereunto set their hands and seals this 11th day of January, A. D. 1902.

| | |
|---|---|
| "T. Toft. | (Seal) |
| "George Morrow. | (Seal) |
| "Mike Donovan, Jr. | (Seal) |
| "George Morrow. | (Seal) |
| "By Mike Donovan, his agent. | (Seal) |

"In presence of Y. V. Dreutzer, Allen Higgins.

"Door County—ss.

"On this 11th day of January, A. D. 1902, personally appeared before me the above named Mike Donovan, George Morrow, and Thos. Toft, to me known to be the persons who signed the foregoing agreement, and acknowledged the same.                                        Y. V. DREUTZER,

(Notary Seal.)    "Notary Public, Door County, Wis.
                "My commission expires December 13, 1902.

"I, Marion Rottman, by John Rottman, her agent, hereby agrees to abide by the survey to be made by surveyor Braun under the within agreement and his survey shall be final on all questions of the location of said the S. E. ¼ of the S. E. ¼ sec. 16, town 30, range 28 east, between me and Mike Donovan and George Morrow, and I hereby agree to pay all the costs and expenses of such survey agreed to be paid by said Donovan and Morrow therein.

"Dated January 11, 1902.    MARION ROTTMAN,
                    "By J. B. Rottman, her Agent.

"Received for record January 21, A. D. 1902, at 2:45 o'clock p. m.                        NIC NELSON, Register."

It is undisputed that in accordance with this agreement, August Braun, the surveyor therein named, on or about the 16th day of January, 1912, ran the survey contemplated by that agreement establishing the southeast corner of said section 16 and ran the boundary lines around the southeast quarter of the southeast quarter of said section. All parties to the agreement, or some of their representatives, accompanied Braun and assisted in the survey. When thus established, the boundary lines were not satisfactory to Morrow and Donovan, and Marion Rottman accepted a reconveyance from them in accordance with the agreement between her and Morrow and Donovan. Marion Rottman and T. Toft are now dead. The correctness of this survey was not disputed by either of them during their lifetime. In no way, shape, or manner did they attempt to impeach the correctness of Braun's findings or to challenge the proper location of the section corner or the boundary lines as established by

Braun, except that certain protests were made to the assessment officers concerning values based upon acreage. Since the death of Marion Rottman, her heirs, the present plaintiffs, have questioned the correctness of the boundaries as located by Braun and have procured surveys to be made. This action, however, was not started until the 23d day of August, 1921.

The case was tried before the court. Findings of fact and conclusions of law were made, and judgment was rendered establishing the southeast corner of section 16 some three eighths of a mile east of the point where it was located by Braun pursuant to the agreement above set forth. From the judgment so entered defendants bring this appeal.

For the appellants there was a brief by *Sanderson & Stapleton* of Sturgeon Bay, attorneys, and a reply brief by *Sanderson & Stapleton,* attorneys, and *Olin & Butler* of Madison, of counsel, and oral argument by *Thomas A. Sanderson* and by *B. H. Stebbins* of Madison.

For the respondents there were briefs by *Lines, Spooner & Quarles,* and oral argument by *Howard A. Hartman,* all of Milwaukee.

The following opinion was filed June 22, 1925:

OWEN, J. It is appellants' contention that the rights of the parties are fixed by the Braun survey made pursuant to the agreement set forth in the statement of facts. It is their contention that this agreement was the submission to arbitration of a controversy concerning the boundary line, and that, pursuant to well-established principles governing arbitrations, they cannot at this time, in view of the evidence in this case, impeach the findings of the arbitrator.

Sec. 3544, Stats., provides that "Except as otherwise prescribed in this section, two or more persons may submit to the arbitration of one or more arbitrators any controversy existing between them at the time of the submission, which

may be the subject of an action." The section prescribes certain controversies which may not be submitted to arbitration, among which is mentioned "a claim to an estate in real property, in fee or for life." But the statute further expressly provides that this shall "not prevent the submission . . . of a controversy respecting the boundaries of lands or the admeasurement of dower." Respondents strenuously claim that there was no controversy existing between the parties constituting the subject of arbitration, and, if there was, it was a controversy concerning the title to real property, and one which could not be submitted to arbitration under the express provisions of sec. 3544.

The agreement itself expressly states that it is entered into "For the purpose of settling the ownership of a tract of land and the timber thereon in the town of Bailey's Harbor, Door county, Wisconsin, in dispute," claimed by one party to be in section 16 and by the other to be in section 15. That states exactly what the dispute was, and that exact controversy is presented in this action. In no sense does it relate to the title to land or an estate in real property. Each party to that controversy then owned, as the parties to this action now own, record title to definite descriptions of property. The disagreement concerns the boundary lines of the property to which they have record title. This constitutes a boundary-line controversy (if there can be one) as distinguished from a controversy relating to title to lands or estates in real property. *Fehrman v. Bissell L. Co.* 188 Wis. 82, 204 N. W. 582 (decided herewith); *Goodridge v. Dustin,* 5 Met. (46 Mass.) 363.

There is no doubt that a controversy existed and that it was a controversy which might properly be submitted to arbitration. Pursuant to the agreement Braun made a plat or map of his survey. Said map together with Braun's field-notes were attached to the agreement and filed in the office of the register of deeds. A certified copy of the agree-

ment, plat, and field-notes was received in evidence. We do not understand that respondents contend that the certified copy of the agreement (which was received by stipulation instead of the original record) was not properly received in evidence, but they do contend that the survey and field-notes were not properly received in evidence. Whether this be true or not, Braun's location of the southeast corner as well as the boundary lines of the southeast quarter of the southeast quarter was abundantly established by the testimony of witnesses who either saw Braun locate the southeast corner or had personal knowledge of the location thereof, so that for the purpose of locating Braun's boundary lines neither his field-notes nor map are essential to be considered. We have, then, a controversy which the statute makes the subject of arbitration, we have a submission of that controversy the form or sufficiency of which is not challenged, and we have abundant proof of the conclusions reached by the arbitrator pursuant to the articles of submission.

But it is further contended by the respondents that Braun did not make a correct survey, and much evidence upon this point was introduced. But it is the settled law that an "award of arbitrators is not to be set aside for mere errors of judgment upon questions of fact or law submitted, but it is subject to impeachment for fraud or misconduct amounting to fraud, or upon clear evidence of mistake when such mistake is not simply a wrong conclusion upon the facts or law submitted, but an unconscious failure to know or apprehend some material fact or right in the light of which their judgment should be exercised." *Donaldson v. Buhlman,* 134 Wis. 117, 113 N. W. 638, 114 N. W. 431; *Keachie v. Starkweather D. Dist.* 168 Wis. 298, 170 N. W. 236. We may pause to remark that unless the Braun plat and field-notes are properly in evidence, there is no evidence to show that Braun did not make a survey in accordance

with the agreement.   But considering them in evidence, it is perfectly apparent that the mistake made by Braun, if he made a mistake, was the result of the exercise of deliberate and honest judgment, knowing all the facts and circumstances, and was not an unconscious mistake, which is the only kind of a mistake which may be relied upon for the impeachment of an award of arbitrators.

In running the south line of section 16 the surveyor, Braun, found a discrepancy between the location of a meander post and the government field-notes.   In other words, the government field-notes indicated that the meander post was set out in the lake, which was an apparent error according to the testimony of every surveyor who testified in the case.   He simply met a surveying problem which he there solved and decided deliberately, and his mistake, if any, was a deliberate mistake.   It was one resulting from the exercise of judgment with reference to known facts.   The establishment of the corner as well as the boundaries by Braun was in effect the award of an arbitrator and is entitled to the same weight.   It cannot be impeached for a mistake resulting from the exercise of honest judgment. It was binding upon the parties to the award, and binding upon their heirs and assigns, both as a matter of law and by force of the original agreement.

More than this, the result of Braun's survey met with the acquiescence of all the parties to the agreement, and especially plaintiffs' predecessor in title.   It is contended by the respondents that there is no evidence of acquiescence, but we can conceive of no plainer act of acquiescence than that of Mrs. Rottman when she accepted a reconveyance of the premises from Morrow and Donovan in accordance with the terms of the agreement of submission.   Even in the absence of such affirmative act indicating acquiescence, the lapse of nearly twenty years, during which time no steps were taken to challenge the award, especially in view

of the fact that Braun has died in the meantime and defendants are deprived of the benefit of his testimony, plainly amounts to acquiescence as a matter of law.

Our conclusion is that plaintiffs are concluded by the submission and the award, and that whether Braun correctly located the boundaries of the premises in question cannot now be inquired into. It results that the judgment appealed from must be reversed, and the cause remanded with instructions to enter judgment dismissing the plaintiffs' complaint.

*By the Court.*—So ordered.

A motion for a rehearing was denied, with $25 costs, on October 20, 1925.