153 So. 416

## BALDWIN v. HARRELSON et al.
### 4 Div. 768.

Supreme Court of Alabama.
Dec. 20, 1934.

E. O. Baldwin, of Andalusia, for appellees.

BOULDIN, Justice.

Bill in equity to settle and establish an uncertain or disputed boundary line between lands of coterminous owners. Code, § 6439 et seq.; section 6465, subd. 5.

Simmons & Simmons, of Opp, for appellant.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

470

This is the second appeal. See Baldwin v. Harrelson et al., 225 Ala. 386, 143 So. 558.

Pursuant to our decision to the effect that pleading and evidence made a case in equity which required the court to fix, determine, and describe the true line, the trial court proceeded to hear the case on the same pleadings and proof, and decreed that the true boundary "is that certain wire fence which was located between the lands of the complainant and the lands of the respondents at the time the bill of complaint in this cause was filed." Complainant appeals from this decree.

The line in dispute is an interior subdivision line, between the N.W.¼ of S.E.¼ and the S.W.¼ of S.E.¼ of Sec. 29, Tp. 4, R. 10, in Covington county.

Complainant, Baldwin, owns north of this line and respondents south.

In 1920, the lands now owned by complainant were owned by J. T. Courson, and those now owned by respondents were owned by C. J. Woodham.

Mr. Woodham, in 1920, proceeded to have his lands surveyed, subdivided into town lots, and platted as a subdivision of the town of Opp. He employed Morgan D. Jones, a land surveyor of experience, who, it appears, had theretofore made some surveys in this section.

Preliminary to making the plat, Mr. Jones undertook to locate this subdivision line between the properties. It appears from his and other testimony that no effort was made to survey the section lines, and then subdivide the section in so far as necessary to ascertain this subdivision line. Indeed, it appears that the field notes of the original survey called for marked trees, ditches, etc., which have disappeared with time, so that the true section corners and lines are now best evidenced by corners and boundaries long recognized in the community and acted upon by the landowners in exercising possession, etc.

Evidence for respondents tends to show that Mr. Jones, after doing some preliminary surveying, concluded an ancient fence row, accepted and recognized by adjoining owners as the boundary line between these parties for twenty years or more, was or should be then treated as the true boundary; that, accordingly, the line was surveyed and located along and with this old fence, or fence row, varying a few feet at places where the old fence was out of alignment; that Mr. Jones marked the line by setting stakes at distances of 100 feet, marking also the corners of lots in the plat he was surveying.

Following this survey the wire fence mentioned in the court's decree was erected.

All parties contend for and agree that the old fence row is, and should be, the true boundary between these forties.

But complainant (appellant) insists the wire fence is not on the old fence row, but runs 20 to 30 feet north of same.

Respondents insist that the wire fence is on the Jones' survey, a straight line, conforming to the general alignment of the old fence, and that, because the old fence was not straight at places, the surveyed line at such point is sometimes north and sometimes south of the old fence, not exceeding three to four feet.

The bill was filed in 1928, less than ten years after this survey and the building of the wire fence. Hence, the question of adverse possession vesting title to the wire fence is not in the case. The evidence is in sharp conflict on the issue above outlined.

██ The evidence was not heard ore tenus by the trial court, and we are required by statute to review same without presumption in favor of his finding.

It is clear the survey was made and stakes set with the purpose of locating and fixing the boundary. This is emphasized by the fact that Mr. Woodham was platting his land with a view to sale of town lots in conformity to the plat.

It is without dispute that Mr. Courson, then owning the land north of the line, knew of the survey, was present and assisted in the building of this fence. While Mr. Courson, as a witness for complainant, disclaims any agreement to such location, yet his testimony, as a whole, fully sustains a finding of acquiescence on his part, as well as active participation in building the fence.

With knowledge of the purpose of such survey and location of this wire fence an implied consent or agreement to the boundary marked by the fence, and the holding of possession on both sides to such fence as a boundary, seems an inescapable conclusion.

██ It is firmly settled, in our decisions, that a survey of lands intended to locate the boundary between adjoining lands, followed by acquiescence and possession by both adjoining owners to the line thus located, is evidence of the verity of such line; and prima facie establishes same as a true line, without regard to the statute of limitations. Chambless v. Jones, 196 Ala. 175, 71 So. 987;

Cooper et al. v. Slaughter, 175 Ala. 211, 57 So. 477; Oliver v. Oliver, 187 Ala. 340, 65 So. 373; Smith v. Bachus et al., 195 Ala. 8, 70 So. 261; Wragg v. Cook, 220 Ala. 111, 124 So. 228.

■ This prima facie presumption is in harmony with the great weight of authority. Indeed, in most jurisdictions the courts have gone further than in Alabama in ending disputes touching boundaries. It seems the prevailing rule is that a parol agreement, in case the line is in doubt and uncertainty, followed by acquiescence and possession, is valid and not subject to the statute of frauds (Code 1923, § 8034). 9 C. J. page 232, § 175 et seq., and notes.

■ We have no occasion to consider whether this is the better rule, and merely reaffirm our own rule that the facts disclosed in this case create a prima facie presumption in favor of the correctness of the line marked by the wire fence.

The present owners, both complainant and respondents, purchased their properties since such line was located and the wire fence built. Each took possession to such line. For aught appearing, their purchases were with knowledge of this fence and possession thereto. This is not without weight as an evidential fact in the case.

■■ Without further review of the evidence, we are not impressed the trial court was in error in his finding. But we are of opinion the court should have gone further and caused the line so decreed to be marked with more permanent evidences on the ground so as to avoid controversies and uncertainties in the future. This is one of the purposes of such suits.

A wire fence may be quite durable or temporary, owing to the material out of which posts are made. This suit presents a controversy as to the location of an ancient fence. Moreover, it may suit the convenience of the parties to remove such fence, and this should not be inhibited by making it a judicially declared boundary. The court, on former appeal, observed the data at hand was not sufficient to enable this court to establish and describe the line with the certainty required by law. Baldwin v. Harrelson et al., 225 Ala. 386, headnote 7, 143 So. 558; Clarke v. Earnest, 224 Ala. 165, 139 So. 223.

Where permanent monuments, natural or artificial, are already on the ground, shown in evidence, and incorporated in the decree, this will suffice, but, if not, the court should cause the line to be permanently marked, as provided by Code, § 6441.

In so far as the decree establishes the wire fence as the true line, it is affirmed; but, for error of omission as indicated, the cause is remanded, with instructions to proceed to have "judicial landmarks" placed as provided by section 6441 of the Code. Let the costs of appeal in this court and the court below be taxed one-half to appellant and one-half to appellees.

Affirmed in part, and remanded for further proceedings.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.