NAGEL and wife, Respondents, vs. PHILIPSEN and others, Appellants.

*April 8—May 6, 1958.*

For the appellants there was a brief by *Strehlow & Cranston* of Green Bay, and oral argument by *Max H. Strehlow*. No brief or appearance for the respondents.

CURRIE, J. The plaintiffs Nagel have served no brief and are in default on this appeal. On the date set for argument counsel for the defendants moved for reversal under Supreme Court Rule 32 (sec. 251.32, Stats.). It lies within the discretion of this court whether to grant such motion. This court is somewhat hesitant to perfunctorily reverse a judgment of a trial court which undoubtedly gave the case careful consideration before entering such judgment. Upon examination of the record on this appeal we have concluded that it is one which should be disposed of on the merits, and not under Supreme Court Rule 32.

The record contains no bill of exceptions and the statement of facts prefacing this opinion has been gleaned from the memorandum opinion and findings of fact of the trial court.

The issue on appeal is whether there are sufficient facts in the record upon which to base a finding as to the location of the boundary line separating the Nagel premises from those owned by the defendants Brebner and Philipsen. If such sufficient facts are found to be present and are undisputed, then this court is in a position to determine the location of such boundary line. However, if such material facts are in dispute, the proper disposition of the appeal would require that the cause be remanded to the trial court to make the essential finding of fact as to the location of such boundary line.

Appellant defendants contend that, because there was mutual acquiescence by the Nagels and Philipsens in the boundary fence separating their respective properties for

approximately thirteen years, such fence should be held to be the true boundary line.

The annotations on the subject of establishment of a boundary line by acquiescence, Anno. 69 A. L. R. 1430, 1500, and Anno. 113 A. L. R. 421, 435, disclose that the cases generally hold that, in order to be effective, acquiescence in a boundary line must continue for the period of time required by the statute of limitations for the acquisition of title by adverse possession. In Wisconsin such statutory period is twenty years. Sec. 330.10, Stats.

In the following Wisconsin cases, which have held that acquiescence by adjoining owners in the location of a fence as establishing the common boundary line of their respective properties was conclusive as to the location of such line, the fence in each case had stood in the same location for more than twenty years. *Wiese v. Swersinske* (1953), 265 Wis. 258, 61 N. W. (2d) 312; *Grell v. Ganser* (1949), 255 Wis. 381, 39 N. W. (2d) 397; *Wunnicke v. Dederich* (1915), 160 Wis. 462, 152 N. W. 139; *Brew v. Nugent* (1908), 136 Wis. 336, 117 N. W. 813; *Wollman v. Ruehle* (1899), 104 Wis. 603, 80 N. W. 919; *Welton v. Poynter* (1897), 96 Wis. 346, 71 N. W. 597; and *Tobey v. Secor* (1884), 60 Wis. 310, 19 N. W. 99.

6 Thompson, Real Property (perm. ed.), p. 483, sec. 3301, states:

"The acquiescence or admission of the owner of land, made under a mistake as to his rights, should neither estop nor prejudice him from subsequently enlarging his possession to the limits of his true title, provided no actual adversary possession has intervened to defeat his title."

A Wisconsin case in accord with the above quotation is *Peters v. Reichenbach* (1902), 114 Wis. 209, 90 N. W. 184.

However, there are exceptions to the general rule, that the fence must have stood for the period of the statute of limitations in order for the acquiescence to be conclusive on the

issue of the location of a boundary line. The cases of *Rottman v. Toft* (1925), 187 Wis. 558, 204 N. W. 585, and *Pickett v. Nelson* (1888), 71 Wis. 542, 37 N. W. 836, illustrate one of such exceptions. In such two cases there was testimony that before the fence was erected a dispute had arisen between the adjoining owners as to the location of the boundary line between their properties, and that the fences were erected pursuant to an agreement that the same marked the location of the true boundary line. In the *Rottman Case* such agreement took the form of having an arbitrator establish the line upon which the fence was erected. These cases hold that where there is a dispute as to the location of a boundary line resulting in an agreement between the owners establishing such disputed line, and a fence is located on such line so established by agreement, which is long acquiesced in by such adjoining owners, these facts are conclusive as to the location of the line, even though the period of acquiescence may fall short of twenty years. For an analysis of the *Pickett Case,* see also *Peters v. Reichenbach, supra,* at page 215, wherein it is pointed out that, without an original dispute prior to the erection of the fence, acquiescence short of twenty years is insufficient to render the location of the fence conclusive as to the location of the true boundary line.

Other fact situations may arise, where a boundary fence may be conclusive upon adjoining owners as to the location of the boundary line, even though the fence has stood for less than twenty years. One example occurs where the fence is erected by a common owner who then sells the adjoining parcels representing to the purchasers that such fence marks the true boundary line. *Thiel v. Damrau* (1954), 268 Wis. 76, 66 N. W. (2d) 747. In that case the boundary happened to be marked by stakes, and not a fence, but the same principle applies. Another example is where subsequent to the erection of the fence one of the adjoining owners by his

conduct causes a third party to believe that the fence marks the boundary line, and in reliance thereon such third party purchases the land of the other adjoining owner. In such a situation the owner, whose conduct caused the purchaser to rely upon the fence as marking the boundary line, is estopped from thereafter claiming as against such third party purchaser that the fence does not mark the boundary line. *Rippey v. Harrison* (1911), 66 Wash. 109, 119 Pac. 178.

We deem that the facts in the instant case fall within still a further exception to the general rule. Before Nagel erected the original fence in 1933 he had a surveyor survey his land, and the fence was then built in reliance on such survey. We consider that such evidence, together with the acquiescence of the Nagels and Brebners for thirteen years in the line as so established, are sufficient to *prima facie* establish that the fence as so erected marked the true boundary line. There is no competent evidence in the record before us to negate such *prima facie* showing.

We deem the case of *Baldwin v. Harrelson* (1934), 229 Ala. 469, 470, 158 So. 416, to be directly in point on this issue. We quote from the opinion in that case as follows:

"It is firmly settled, in our decisions, that a survey of lands intended to locate the boundary between adjoining lands, followed by acquiescence and possession by both adjoining owners to the line thus located, is evidence of the verity of such line; and *prima facie* establishes same as a true line, without regard to the statute of limitations. *Chambless v. Jones,* 196 Ala. 175, 71 So. 987; *Cooper et al. v. Slaughter,* 175 Ala. 211, 57 So. 477; *Oliver v. Oliver,* 187 Ala. 340, 65 So. 373; *Smith v. Bachus et al.,* 195 Ala. 8, 70 So. 261; *Wragg v. Cook,* 220 Ala. 111, 124 So. 228."

If competent evidence had been introduced in the instant case showing the true boundary line to have been different from that of the original fence line, then the general rule, which requires that the fence must have stood for twenty years, would be applicable. However, the *prima facie* case

made out by the defendants, as to the location of the boundary line between their lands and that of the Nagels, was not so negated. Therefore, the defendants are entitled to judgment upon their counterclaim for the amount of damages found by the trial court, the same being $75.

*By the Court.*—That part of the judgment appealed from, which dismissed the counterclaim on the merits, is reversed, and cause remanded with directions to enter judgment in behalf of the defendants and against the plaintiffs for $75 together with costs.

HALLOWS, J., took no part.