BEASLEY, Appellant, v. KONCZAL, and wife, Respondents.

Supreme Court

*No. 76–178. Submitted on briefs November 29, 1978.—*
*Decided January 30, 1979.*
(Also reported in 275 N.W.2d 634.)

For the appellant the cause was submitted on the brief of *Michael P. Lehner* and *Lisheron Law Office* of Princeton.

For the respondents the cause was submitted on the brief of *Edward J. Hart* and *Hart & Hart* of Waupaca.

DAY, J. This is an appeal from a judgment entered June 21, 1976 by the county court of Waushara county,

the Honorable David C. Willis, presiding, determining the location of the north line of the southwest quarter of the southeast quarter of Section 25, Township 19 North, Range 9 East was established by the May 7, 1973 Palmer survey adversely to the plaintiff, John Beasley. The plaintiff appeals.

The question is whether the finding of the trial court as to the correct location of the north boundary line of the southwest quarter of the southeast quarter of Section 25, Township 19 North, Range 9 East is against the great weight and clear preponderance of the evidence. The land is in the Town of Deerfield, Waushara County.

Fig. 1.

Figure 1 is based on the plat map of Karin shores. The dark portion is the plat of Karin Shores. The unshaded triangle at the left end of the plat is the property claimed by John Beasley. The defendants, James T. Konczal and Geraldine M. Konczal, his wife own land south of the triangle shown by hatch lines.

The deed to Mr. Beasley described the land conveyed to him as:

"Commencing one hundred twenty-five (125) feet East of the Northwest corner of the Southeast quarter (SE ¼) of the Southeast quarter (SE ¼) of Section

number twenty-five (25), Township number nineteen (19) North, Range number nine (9) East; running thence due west a distance of 506 feet, more or less to the shore of White River Lake, thence northeasterly along the southerly shore of White River Lake to a point due north of the place of beginning, and thence due south to the place of beginning. Containing approximately one-half acre, more or less."

The deed to the Konczals described their property in Section 25 as:

"The east 264 feet of the west 1,287 feet of the south one-half of the southeast one-quarter of section 25 in Township 19 north, Range 9 east, in Waushara county, Wisconsin. . ."

Fig. 2.
(Palmer Survey)

John Beasley, the plaintiff and appellant in this case, initiated this action for trespass in October, 1973 when the defendants, Mr. and Mrs. James J. Konczal, began to use certain real estate fronting on White River Mill Pond which Beasley claimed he owned.

Before 1955, Beasley's parcel was owned by the White River Power Company as a part of the north half of the southeast quarter of section 25. The White River runs across the north 80 acres. A mill dam on the east line of the 80 acres creates an artificial body of water known as the White River Mill Pond, also referred to as the White River Lake. This mill pond covers most of the eastern part of the northwest quarter of the southeast quarter of the section. A small bay extends across the south line of the northwest forty into the southwest quarter of the southeast quarter of the section. A small triangle of land lies between the south shore of the mill pond and the south line of the northwest quarter of the southeast quarter, east of where the bay extends into the southwest quarter of the southeast quarter.

The northeast quarter of the southeast quarter is about half covered by the mill pond. The high land on these forty acres surrounds the east end of the mill pond. In September, 1955, Leonard Krueger bought the entire northern half of the southeast quarter section, and platted the available lands east of the lake as Karin Shores.

Krueger had George E. Phillips survey the exterior boundaries of the land he had purchased and subsequently he had Phillips prepare the plat of Karin Shores. The Phillips survey was not admitted into evidence by the trial court.

A small triangle at the lower left end of the plat was not included in the plat. Krueger sold this triangle to Beasley on May 7, 1956.

Beasley maintained that he owned to the line marked by the Phillips survey as the boundary line between the

southwest and northwest quarters of the southeast quarter. He and his family used the property for fishing, boating, and walking. If the south boundary line of Beasley's parcel is correctly established by the Phillips survey, it completely cuts off the Konczal parcel from access to the mill pond.

The parties discussed sale of a strip of property to the Konczals to provide them access to the lakefront, but no agreement was ever reached. The boundary line between their property was not in dispute until 1973 when the Konczals asked Waushara County Surveyor Donathan Palmer to survey their property. The Palmer survey showed the north boundary of the southwest quarter of the southeast quarter of section 25–19–9 to be north of the line established by the earlier Phillips survey. This meant that the Konczals had about 125 feet of lake frontage. As a result, the Konczals took possession of the disputed strip of land at the end of May, 1973, putting in a pier and using the property to the lake front. This occurred about seventeen years and one month after Beasley bought the triangle.

An earlier survey done in 1948 by Waushara County Surveyor George Vergin showed that the parcels subsequently owned by the Konczals extended to the shore of the mill pond. In addition, Beasley's attorney at a pretrial conference in this case requested the court to appoint a surveyor. The survey, performed by Harold E. King, showed that the location of the forty line between the southwest and northwest quarters of the southeast quarter was that established by the Palmer survey.

Beasley argues first, that the Palmer survey must be disregarded because it establishes the north line of the southwest quarter of the southeast quarter further north than the neighboring north line of the southeast quarter as established by the recorded plat of Karin Shores. The

plat of Karin Shores was based on the private survey done in 1955 by George Phillips. The Phillips survey itself was not admissible at trial because it was a private survey, and the surveyor did not testify. *Gahan v. Lymer*, 196 Wis. 313, 317, 220 N.W. 532 (1928). Beasley does not argue that the Phillips survey falls within any of the exceptions to the hearsay rule in sec. 908.03, Stats. 1975.

The trial court did consider the plat of Karin Shores, however, and stated in its opinion:

"This plat purports to be entirely within the Northeast quarter of the Southeast quarter of Section 25–19–9. The plat uses the East quarter corner of Section 25–19–9 as its starting point. The plat then extends south to the South line of the Northeast quarter of the Southeast quarter of 25–19–9. No place on the plat is there a reference to the distance along this East line. The plat is shown to be drawn to a scale of one inch for one hundred feet. Using that scale and a ruler the East line of the plat scales out at 13¾ inches which would equal 1375 feet. The Palmer Survey lists the distance at 1318.78 feet. The Court finds that in all respects the Palmer survey fits with the accepted practices of surveying and that the results of the survey were reenforced by the near proximity to the normal distances within a quarter section."

Thus, it appears the plat of Karin Shores did not definitely establish the boundary line between the northeast and southeast forties, nor the boundary line between the northwest and southwest forties.

Findings of fact by the trial court will not be upset on appeal unless they are against the great weight and clear preponderance of the evidence. The evidence supporting the findings of the trial court need not in itself constitute the great weight and clear preponderance of the evidence; nor is reversal required if there is evidence to support a contrary finding. Rather, to command a rever-

sal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *In re Estate of Jones,* 74 Wis.2d 607, 611, 247 N.W.2d 168 (1976). When more than one inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Gehr v. Sheboygan,* 81 Wis.2d 117, 122, 260 N.W.2d 30 (1977).

The results of the Palmer survey were supported by a 1948 survey done by the Waushara County Surveyor, and by a survey done by a court-appointed surveyor, Mr. King. Thus, it cannot be said that the finding of the trial court was against the great weight and clear preponderance of the evidence.

In his second argument Beasley relies on the doctrine of acquiescence. This rule was explained in *Buza v. Wojtalewicz,* 48 Wis.2d 557, 562–564, 180 N.W.2d 556 (1970):

"The doctrine of acquiescence is a supplement to the older and harsher rule of adverse possession which held that adverse intent was the prerequisite of adverse possession. This meant that in order for the adverse possessor to start the twenty-year period running, he must commence his possession with knowledge that the land he was encroaching upon was not his and with an intent to dispossess the true owner. This meant that one who occupied part of his neighbor's land, due to an honest mistake as to the location of his boundary, could never start the statute running because he never formed the requisite adverse intent.

"The harsh result of this rule soon became apparent in many jurisdictions and courts began to hold that land could be acquired by adverse possession, even though adverse intent was absent, if the true owner acquiesced in such possession for a period of twenty years. It is important to note that initially the period of time required for adverse possession continued to be twenty years even when the acquiescence version of the doctrine was applied."

■ This rule applies the twenty year statute even though the one in possession of the disputed land did so in the honest belief he had a right to the land and the adverse party acquiesced in such possession. The rule does not require that the one seeking to benefit from the adverse possession statute establish that he knew the land was not his when he took possession and intended to deprive the true owner of possession.

When the claim to land is under color of title by virtue of a written conveyance or a judgment of a competent court the period of possession required to exclude another's claim is ten years. Sec. 893.06, Stats. 1973.[1]

Where the claim is not within the written description the twenty year statute applies. Sec. 893.08, Stats. 1973.[2] Sec. 893.10(1), Stats. provides in part as follows: ". . . an adverse possession of . . . 20 years under [sec.] 893.08 . . . shall constitute a bar to an action for the recovery of such real estate so held adversely or of the possession thereof. . . ."

■ The statutes construed in *Buza* were identical to the 1973 statutes. The disputed lands were not within the

---

[1] "**Presumption of adverse holding under conveyance or judgment.** Where the occupant or those under whom he claims entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question, or upon the judgment of some competent court, and that there has been a continual occupation and possession of the premises included in such instrument or judgment or of some part of such premises under such claim for 10 years, the premises so included shall be deemed to have been held adversely; except that when the premises so included consist of a tract divided into lots the possession of one lot shall not be deemed the possession of any other lot of the same tract."

[2] "**Extent of possession not founded on writing, judgment, etc.** When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not

calls of Beasley's deed because the evidence established that his southern boundary line (the boundary between the northwest and southwest forties) was, in fact, north of the line which he claimed was the true boundary. Thus, the twenty year statute applies, not the ten year statute.

In *Buza,* the court pointed out that there were exceptions to the rule that the acquiescence must be for a period of time equal to the statute of limitations:

(1) Where there is a dispute as to the location of the boundary line resulting in an agreement between the owners establishing the disputed line, and a fence is located on the line established by the agreement which is long acquiesced in by the adjoining owners, these facts are conclusive as to the location of the line, even though the period of acquiescence falls short of twenty years. *Rottman v. Toft,* 187 Wis. 558, 204 N.W. 585 (1925); *Pickett v. Nelson,* 71 Wis. 542, 37 N.W. 836 (1888). This exception does not apply in the instant case because there is no evidence that a fence was erected as a result of an earlier dispute.

(2) Where adjoining owners take conveyances from a common grantor which describe the premises conveyed by lot numbers, but the grantees have purchased with reference to a boundary line marked on the ground and shown to them by the grantor, the location of the boundary line so established by the common grantor is binding on the original grantees and all those claiming under them, irrespective of the length of time which has elapsed. *Thiel v. Damrau,* 268 Wis. 76, 81, 66 N.W.2d 747 (1954).

This exception does not apply because the owners did not acquire title to platted lots from a common grantor.

(3) A fence built in reliance on a survey, acquiesced in by the neighbors over a period of years, is prima facie

founded upon any written instrument or any judgment or decree, the premises so actually occupied and no other, shall be deemed to be held adversely."

evidence establishing that the fence marked the true boundary line, where there is no competent evidence showing the true boundary line to be different from the fence line. *Nagel v. Philipsen,* 4 Wis.2d 104, 110, 90 N.W.2d 151 (1958).

This exception does not apply because there was competent evidence establishing the true boundary line.

We hold that in this case the twenty year statute applies and Beasley, having held the land in question for seventeen years and one month before his ownership was challenged by the Konczals, did not meet the requirements of the statute. The finding of the trial court that the Palmer survey established the proper boundary is not against the great weight and clear preponderance of the evidence and accordingly must be upheld.

*By the Court.*—Judgment affirmed.